Ruffin, C. J.
 

 Upon the plaintiff’s own evidence his lessor was, at the trial, a tenant in common with her aunt, Ann Pierce, and also, at the date of the demise, with her brother, William Henry, then living ; and therefore the Court holds it erroneous to say, that the plaintiff was
 
 entitled
 
 to recover the whole lot. It is true, that a general mode of declaring upon a demise of a tenant in common for the whole has been tolerated, and upon it a recovery for the share allowed. It has been also held not to be necessary, that, in such a case, the verdict should find the precise share, to which the lessor of the plaintiff was enti • tied ; butihat it may find the defendant guilty in general terms and then leave the parly to take possession at the
 
 *452
 
 risk,should he take more than belongs to him, of being answerable therefor to the action of the other party, and also liable to a summary order of the Court for restoration of possession. But it is not the absolute right of the plaintiff to have such a verdict. The jury may find according to the title ; and, when the extent of it can be seen with reasonable certainty, it is recommended as the more correct, and it isusual,toset forth in the verdict the undivided share, to which the title appeared, and to enter the judgment accordingly.
 
 Godfrey
 
 v.
 
 Cartwright,
 
 4 Dev. 487.
 
 Arch Forms
 
 380.
 
 Lenoir
 
 v.
 
 South,
 
 9 Ire. 237.
 
 McArthur
 
 v.
 
 Porter,
 
 6 Peters 205. By that method questions are settled at once, which might otherwise produce troublesome controversy in other forms. The propriety of that course is more particularly exhibited in an action by one of the tenants in common against another ; in which case it is clear, the plaintiff cannot he entitled toa verdict in such a form, as would enable him to take judgment and execution authorising him, on their face, to turn the co-tenant out of the whole. That was admitted at the bar to be proper in the case last supposed. But it was argued and it seems to have been the ground of the decision below, that it is otherwise, when the parties are not tenants in common, as was supposed to be the fact in this case. It was not,indeed, the fact, since, as will be presently mentioned, the defendant has the title of Mrs. Garret, at least. But if it wTere true, it could make no difference. For the question is not, what the tenant has a right to hold ; but it is, what part the plaintiff has a right to recover. Now, that is what the lessor of the plaintiff hada right to demise ; namely, the undivided share, and no more. For, although the demise laid is for the whole, the very point of the dispute is, whether the lessor could make such a demise, or, if not, for any and what part; and the recovery must be for the share the lessor might rightfully have demised. For, tenants in common have several titles, and
 
 *453
 
 therefore each of them had to bring his several assize against a disseisor, as he was obliged to count truly on his title, and the recovery of one could not be for more than he demanded or could legally demand. Hence, necessarily, under the judgment, he entered into his share only and became seised with the disseisor. In like manner,,no more can be' rightfully recovered in ejectment, even against a wrong doer, than the share of the plaintiff’s lessor ; for, the demise of a tenant in common, whether in the form of a lease for the whole, or for a share, is really effectual for the share only, and, by a necessary consequence, the law cannot adjudge to a plaintiff more than the right, thus derived from the lessor, invests him with. The jury might, according to the modern practice, have omitted to find the quantum of interest of the lessor, which would have left that to be determined in proceedings consequent upon the plaintiff’s taking possession of too much — since that course seems to be established. But that will not
 
 entitle
 
 the plaintiff to call on the jury to go further than to say, he has some interest in the land, and, agreeably to the direction here, require them to find expressly, that the defendant was guilty as to the whole premises, when the lessor’s title, and, of course, his lease, is for less. For, against an affirmative verdict, that the plaintiff was entitled to the whole or to a certain part of the premises and a judgment accordingly, the Court would not be at liberty, in a summary way, to re-examine the title and control the execution of the writ of possession, or in an action for the
 
 mesne
 
 profits limit the amount of damages to the true interest of the lessor of the plaintiff, as was done in
 
 Holdfast
 
 v.
 
 Shepard,
 
 9 Ire. 222.
 

 Although the decision of the foregoing point disposes of the case in this Court, yet it is deemed proper to consider of the others, as most or all of them will probably arise on another trial. -
 

 
 *454
 
 Then, in the next place, the Court holds, that the deed from Garret and wife was duly executed to pass her inheritance. The objection urged against it is, that the
 
 feme
 
 was a resident in Maryland, and her examination and acknowledgment were taken on a commission from the Court of this State ; whereas, it is alleged, a commission only goes when the woman is a resident of another “County” in this State, and the deed ought to have been acknowledged before a Judge in Maryland, or under a commission from some Court of record in that State. But the objection isinno part tenable. The act of 1751 directed a commission from the Court of the County in which the land lies, when the wife is a resident of any other “Country.” By a misprint the word is changed in the Revised Statutes of 1836 to “County.” But that cannot affect this case, because this proceeding was in 1817 under the act of 1751. But, if it had been after 1836, the Court would still hold the deed good; for the change from “Country” to “County” does not alter the sense of the act. In the next section the act retains the form of the commission given in 1751, and the words of it are, that the wife “is not an inhabitant of our said State.” Indeed, upon referring to the manuscript original intheSecre' tary’s office, the word appears to be “Country.” It is therefore clear, that, in respect to residence merely, the act does not intend to form a commission on its being in the same County in which the land lies or in a different County in this State; but that it is to go, only when the maker of the deed lives out of the State. The other branch of the objection, that, the deed ought to have been acknowledged before a judicial officer of Maryland, is also mistaken. The act of 1810, which authorises that course, is cumulative. It has never been supposed to supersede thatof 1751; but eithermethod has been practised, as it suited the convenience of parties. The act. of .183.6,
 
 *455
 
 indeed, preserves in it- both the act of 1751 and that of 1810 — thus clearly giving an election between them.
 

 With respect to the deed from Pierce and wife, the facts do not appear with sufficient distinctness, to authorise the Court to form a satisfactory or positive opinion. But, as they are supposed to be, the Court would concur in holding it ineffectual as the deed of the wife, for want of a due acknowledgment and privy examination. The entry of record, appointing McColl and Jones to take the examination, does not state, that the deed had been then proved, and it cannot be collected from the certifícate of probate that it had been. The inference is rather to the contrary ; for, according to the copy set forth in the case, the certifícate of probate is on the commission, and therefore creates a presumption, that McColl proved the deed, when he returned the commission. If so, it would be wrong, as the act allows the commission to be ordered, only when the deed has been already executed and acknowledged by the husband or proved. But, Secondly, there was no order for a commission, and the act expressly requires such an order. Indeed, upon the face of the papers it would rather seem, that, wdth or without proof of the execution, McColl and Jones were, as members of the Court, appointed to take the privy examination of the woman, as being within the verge of the Court. If that be the fact, the proceeding is likewise wrong, because that can only be done, when the deed has been personally acknowledged in Court by the husband and wife; in which case, consequently, the wife is examined only, w-hethershe doth voluntarily assent thereto. It was held in
 
 Burgess
 
 v
 
 Wilson, 2
 
 Dev. 306, that the two methods are substantially different, and that each must be observed in its appropriate case- Indeéd, the counsel here seemed to yield this point: and therefore the Gourt sufft poses the statement is not more precise,
 

 
 *456
 
 But, supposing that deed not to be good as to the inheritance, there is still the question, whether the plaintiff can recover during the life of Peter Pierce, the husband. There lacks nothing to complete his title, as tenant by the curtesy, unless it be a seisin during the coverture. That person says, that neither he nor his wife ever had possession of the premises. But that must mean merely, that they did not in fact occupy, nor have perception of any profits; and he cannot be supposed to swear, that he was not in possession by operation of law. Upon that point we concur with his Honor, conceiving it to be perfectly settled in our law. that, when no other person holds, the possession is constructively in the owner. The husband and wife are in, as to all the world besides themselves, and there seems to be no reason, why
 
 they
 
 should not be so deemed as between themselves If the husband allow another person to be in possession, whereby the-wife’s estate may be prejudiced, he is justly excluded from the estate, which would enure to him if he had done his dut}>- by evicting the wrong doer. But when the land is wild, for example, the husband is not bound to improve it, nor go through the frivolous formality of once setting his foot on it, in order to acquire his estate hj' the curtesy. However it may be elsewhere, there have been so many cases in this State, in which the owner of land, not occupied by any other person, has been held to have the rights and remedies of an actual possessor, that it cannot be called in question now. Then had Pierce and wife such a possession during the marriage ? The contrary is suggested, only by reason that Potter claimed the land and had taken possession of it before the marriage. But he did not marry until two years after Golden’s death, that is, sometime in 1817, and Garret’s deed was made in October of that year; whereas Pierce was married in August 1816, and there was thus a clear interval of several months, in which it cannot be imagined that Potter
 
 *457
 
 had entered, and the possession was in Pierce and wife» But, as the Court conceives, there was no evidence on which it could be found, that Potter ever took possession in fact, or that, up to the time of his deed to the defendant» he had any other possession than the rightful one implied by law to be in him, as the owner of shares in the lot under his purchases. It may be conjectured, that he would exercise acts of ownership over the premises, if he lived near them. But there is nothing, which the law can deem evidence of it, proper to be left tó the jury. He derived no title to the premises through his wife ; for she. took no interest in them under the will and she did not dissent. And the law can never allow the presumption, that one took possession of land as a mere trespasser, upon a bare possibility, that be may have set up an un» founded claim to some interest in it and without any proof to the fact itself. It was taken for granted, that Mrs. Potter claimed the premises under the general disposition in the will of all the real estate for her life. But that is begging the question, and is contrary to both a natural and legal presumption ; for, as the premises were subsequently purchased by the testator and did not pass, by the will, the hypothesis, that the widow, nevertheless, claimed and took possession of them is entirely inadmissible, without evidence to the fact: of which the case-states none was given here as to any period prior to 1828. Indeed it does not appear, that there was a house or a fence on the lot, or that any person occupied it. The-Court therefore holds it to have been erroneous to submit the question of a possession by Potter to the jury, upon the evidence given
 

 Supposing, however, that upon the next trial it should' appear, that Mrs. Golden claimed the premises for life and actually held them upon such claim from Golden’s death, then we should hold, that no estate arose to the husband, Pierce ; and the title of the lessor would depend
 
 *458
 
 on the sufficiency of her mother’s deed : of which all has been already said, which the statement before us will allow. If that should turn out to be insufficient, the lessor of the plaintiff will be entitled to one sixteenth of the premises, according to the statement of the family before us. For, Golden’s will shows that he left two brothers and their families, and a sister. Ann Garret, and another sister or her two daughters, one of whom was the mother of the lessor of the plaintiff Therefore the premises would be divisible, first, into four shares ; and, next, one of them would be again divided between Sarah and Ann Fleming, in case their mother was dead, and the lessor of the plaintiff would be entitled to one half of Sarah’s eighth, or one sixteenth. The other sixteenth may belong to her now, but it did not on the day of the demise, but was then vested in her brother, William Henry, who died in 1841. Upon the question, whether the grandmother of the lessor of the plaintiff was dead or living, there was evidence, and strong evidence to be left to the jury. The circumstances, that Golden does not notice her in his will, while he provides for her children ; that no account is given of her since 1808, although her son-in-law was examined on the trial, and that Potter purchased from one of her children ; all tend to raise a presumption of her death long ago. It is true his Honor stated inaccurately, that the plaintiff might recover, if she died before this suit was brought; for, to have that effect her death must have occurred before the defendant’s title was perfected by the statute of limitations. But the position was laid down in reference to the instruction prayed; which did not relate to the period of that person’s death, but insisted, on the contrary, that she was then living ; and, thus restricted, it was correct.
 

 Per Curiam.
 

 Judgment reversed and a
 
 venire de novo.