CITY AND COUNTY OF SAN FRANCISCO *v.* LAWTON, ADMINISTRATOR OF THE ESTATE OF MOWRY, DECEASED, AUSTIN E. SMITH, VOLNEY E. HOWARD, E. L. GOOLD AND D. W. PERLEY.

THE object of the suit to foreclose a mortgage, under our law, is to obtain the sale of the estate, which the mortgagor held at the time he executed the mortgage, and the application of the proceeds of the sale to the payment of the demand, for the security of which the mortgage was given. All persons who are beneficially interested, either in the estate mortgaged or the demand secured, are proper parties to the suit. This rule, as a general thing, will only embrace the mortgagor and mortgagee, and those who have acquired rights or interests under them. Where prior incumbrancers are made parties, it is only for the purpose of liquidating the amount of their demands, and paying them out of the proceeds of the sale.

Adverse titles to the premises held by parties claiming by conveyance from the mortgagor prior to the mortgage, or from third parties prior or subsequent to the mortgage, are not the proper subjects of determination in the suit. Such titles must be settled in a different action, giving rise, as they generally do, to questions of purely legal cognizance.

The foreclosure operates, except in a single instance, only upon the estate or interest which the mortgagor possessed at the time, and the sale under the decree passes, with the like exception, only such estate or interest. The exceptional instance arises where the mortgagor has, subsequent to the execution of the mortgage, acquired a title which enures, by way of estoppel, to the benefit of the mortgagee. In such case the foreclosure operates upon the subsequently acquired title to the same extent as if originally held by the mortgagor, and the sale under the decree passes it. In all other cases the estate mortgaged is the only estate brought under the consideration of the Court, and the only estate affected by its decree.

A vendee may deny the title of his vendor. Parties with clear titles may buy out settlers and trespassers rather than incur the expense and delay of establishing their rights by litigation; and where, in such case, they are made parties to a suit to foreclose a mortgage executed by their grantor previously to the conveyance to them, they are not estopped from denying the title of the mortgagor, and from claiming that their rights under their previous titles are superior to those of the mortgagee.

A quitclaim deed only purports to release and quitclaim whatever interest the grantor possesses at the time. He does not thereby affirm the possession of any title, and is not precluded from subsequently acquiring a valid title and attempting to enforce it. So a grantee in a quitclaim deed may deny that he received any estate by the deed.

A grantee of land in fee may deny that he received any estate by the conveyance. With the execution of the conveyance the transaction between the parties is closed. Thenceforth the grantee holds the property for himself, and is neither bound to surrender possession to his grantor, or to maintain the validity of his title.

*Clark* v. *Baker* (14 Cal. 612) commented on, and shown not to conflict with the opinion in this case.

APPEAL from the Fourth District.

This was an action brought by the City and County of San Francisco to foreclose a mortgage given to secure a promissory note in the words and figures following:

"$20,000.            SAN FRANCISCO, Dec. 22d, 1854.

"For value received, I promise to pay to the Mayor, Controller, and Treasurer of the City of San Francisco, one year from date, the sum of twenty thousand dollars, and to pay interest thereon monthly in advance, on the twenty-second day of each and every month, at the rate of two per centum per month till paid; upon each and every failure to pay interest monthly in advance, as herein specified, the whole of said principal and interest to be deemed due and payable.

"LYMAN MOWRY."

The note and the mortgage of the same date are set out and made a part of the complaint. The complaint alleges that the money was loaned to Mowry by the Mayor, Controller and Treasurer, out of a certain fund belonging to the city; that the city ordinance, No. 628, was the foundation of the authority for those

officers to loan the money; that Mowry in his life time conveyed all his right in the property to one Leander Sawyer, and that he sold and delivered possession to Howard and Perley, and Thorne, under whom Gould and Smith, two of the defendants, claim; that the last payment of interest was made by Sawyer March 22d, 1855; that Mowry died on January 7th, 1855, and that Nathan Porter was appointed administrator on his estate; that he afterwards resigned, and that the defendant, Job G. Lawton, was appointed administrator *de bonis non* November 8th, 1855, and that on the tenth of the same month he admitted and allowed the claim; that Mowry entered into the contract with Stephen P. Webb, William Sherman and David S. Turner, as Mayor, Controller and Treasurer of the city of San Francisco, for the use and benefit of the city, and that the note and mortgage are now vested in the city and county of San Francisco, under the Act of 1856.

The complaint expressly waives all personal demand against the administrator and against the estate of Mowry, and no personal judgment is demanded on the note against any body.

The only relief asked is to enforce the mortgage against the land.

To this complaint all the defendants, except Lawton, demurred. The other defendants also filed an answer duly verified. The demurrer was overruled and defendants excepted.

The answer of the defendants set up various grounds of defense, and among others the following:

1st. That the defendants had a good and valid adverse title, to wit: a grant from the Mexican government confirmed by the Board of Land Commissioners and by the District Court, and also a patent from the United States. 2d. That defendants entered into possession under their own title, and did not claim under Mowry or his estate. 3d. That the plaintiff and Mowry, under whom plaintiff claims, were strangers to the grant and patent under which the defendants claimed. 4th. A sale of the land for taxes for the year 1857, a purchase by Gautier, a Tax Collector's deed to him, and mesne conveyances from him to D. W. Perley, one of the defendants. 5th. A denial that their rights, being a claim under an adverse title, could properly be litigated in a foreclosure suit; and prayed, that as to them, the bill might be dismissed.

The mortgage by Mowry runs:—"Hath granted, bargained, sold, aliened, released, conveyed and confirmed, and by these presents, doth grant, bargain, sell, alien, release, convey and confirm, unto the said parties of the second part and to their successors in office and assigns forever, all that," etc.,	\*	\*	\*	and "together with all and singular the tenements, hereditaments and appurtenances thereunto belonging, or in any wise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof, and also all the estate, right, title, interest, property, possession, claim and demand whatsoever, as well in law as in equity, of the said party of the first part, of, in and to the same, and every part and parcel thereof, with the appurtenances, to have and to hold the above granted and described premises, with the appurtenances, unto the said parties of the second part, their successors in office, and assigns, to them and their own proper use, benefit and behoof forever."

The deed from Mowry to Sawyer bargains, sells and quitclaims "all his right, title, interest, claim and demand of, in and to" the premises.	The deed from Sawyer to Howard, Perley and Thorne, remises, releases and quitclaims, and in the conclusions runs thus: "And also all the estate, right, title, interest, property, possession, claim and demand whatsoever, as well in law as in equity, of the said party of the first part, of, in and to the above described premises, and every part and parcel thereof, with the appurtenances. To have and to hold all and singular the above mentioned and described premises, together with the appurtenances, unto the said parties of the second part, their heirs and assigns forever." The other deeds are mere quitclaims.

The Court made a final decree in favor of the plaintiffs, ordering the land to be sold to pay the debt, and foreclosing the rights of defendants in the property. All other material facts appear in the opinion of the Court.

A motion for a new trial was made by defendants, which was denied, and from the order refusing a new trial, and from the final decree, they appeal.

*D. W. Perley*, for Appellants.

I.   The decree below was wrong, because defendants produced on the trial complete evidence of legal title in themselves, to wit: a grant from the sovereign·power, regularly confirmed, and upon which a patent had been issued.   This was conclusive evidence of the existence, validity and confirmation of the grant recited in it, and established the title of the patentee from the date of the grant in 1839.   (*Moore* v. *Wilkinson*, 13 Cal. 478 ; *Yount* v. *Howel*, 14 Id. 465 ; *Waterman* v. *Smith*, 13 Id. 373 ; *Stark* v. *Barrett*, 15 Id. 363.)

This patent was conclusive evidence against the Government and all parties claiming under the Government, and against all parties claiming no higher title than mere possession.   (*Mott* v. *Smith*, 16 Cal. 535.)

II.   There was no estoppel either by record or matter *in pais* to prevent defendants from relying on their own title in this action.

If it were true, as plaintiff alleges, that defendants entered under a deed from Sawyer, who entered under Mowry, this would be no estoppel.   It was a mere quitclaim deed, and this never estops any body.   An estoppel must be reciprocal ; it must bind both parties or neither.

Privies in blood, (as the heir) privies in estate, (as the feofee) privies in law, (as lords by escheat) tenant by courtesy, tenant in dower, and others that come under by act of law, shall be bound by and take advantage of estoppels.   (Coke Litt. 352, a.)   But it is a well established principle that a mere quitclaim deed, without covenant or warranty, does not estop the grantor from showing that no title passed by such deed.   And if it does not estop the grantor, by the principle of reciprocity it cannot estop the grantee from denying the title of the grantor at the date of the deed.   It is evident that no relation of landlord and tenant, not even in a qualified form, exists between the grantor and the grantee.   If the vendor has actually executed a conveyance, his title is extinguished in law as well as in equity.   The vendee acquires the property for himself, and he is under no obligation to maintain the title of the vendor.   He holds adversely to the grantor, and may treat him as a stranger to the title.   (*Osterhout* v. *Shoemaker*, 3 Hill, 518 ; *Bright's Lessee* v. *Rochester*, 7 Wheat. 535 ; *Watkins* v. *Holman*,

16 Pet. 54; *Society for Propagation, etc.* v. *Town of Pawlet,* 4 Id. 506; *Voorhies* v. *White's heirs,* 2 Marsh. 27; *Winlock* v. *Hardy,* 4 Litt. 276; *Garnett* v. *Wainman,* 3 Bing. N. C. 69; *Sparrow* v. *Kingman,* 1 Coms. 253.)

A deed can only estop and bind parties and privies, privies in blood, privies in estate and privies in law. It does not bind those who claim by title paramount to the deed. It does not bind persons claiming by title anterior to the date of the deed. (*Carver* v. *Jackson,* 4 Pet. 82; *Jewell* v. *Harrington,* 19 Wend. 472; *Averill* v. *Wilson,* 4 Barb. 191; *Gee* v. *Moore,* 14 Cal. 472.)

The result of the authorities is, that the acceptance of a quitclaim deed is no estoppel, and that the defendants, even if they entered into possession under it, were not estopped from attacking it and standing on their own better title, either in law or equity.

But even the pretext that the defendants entered under Mowry, and are therefore estopped to deny his title, is not available to plaintiff.

Defendants did not enter under Mowry or his title. This was proven by Sawyer, one of plaintiff's witnesses. He was in possession, and the defendants demanded that he should give it up. They claimed title under the grant. They threatened to eject him, and he under the threat of ejectment gave up possession. He acknowledged in writing the defendants' title contemporaneously with the execution of the deed. This instrument is a part of the record. The defendants expressly repudiated all idea of entering under him. They claimed to enter under their own title and did enter under it.

The cases of *Clark* v. *Baker* (14 Cal. 612) and of *Clark* v. *Boyreau* (Id. 634) do not determine against the defendants any of the questions involved. The position occupied by them is precisely the reverse of that occupied by Baker.

Baker at the time he purchased from Clark had no title. He mortgaged the property to Baker for the purchase money. He entered into possession under Baker's deed. Baker subsequently acquired another title and made a new mortgage to Touchard, and the question was, whether Baker or those claiming under him could set up this subsequently acquired title to defeat his own mortgage. The Court held he could not.

In this case, defendants executed no mortgage and created no lien on the premises, neither do they claim under any subsequently acquired title. The estoppel against Baker was to deny the lien which he himself had created. There is not the slightest analogy in the two cases.

If the defendants, having no title, had purchased from Sawyer, entered into possession under him, and then executed the mortgage in controversy to the plaintiff, and afterwards had acquired the Leese title, according to this case they would have been estopped to set it up to defeat their mortgages, on grounds of public policy, etc., and the cases would have been precisely alike.

But if the Court in this action should allow the decree of foreclosure to stand, it would be equivalent to an utter confiscation of the whole property, for the Court held in *Clark* v. *Boyreau* that where the plaintiff in ejectment claimed under a Sheriff's deed, executed upon a purchase made on a sale under a decree of foreclosure, and the defendant was a party to the foreclosure suit, he would be excluded by the decree from setting up a title which was in that suit adjudicated against him. This would leave defendants without remedy.

III. The defendants having shown a valid adverse title, it was error in the Court to try the validity of that title in a foreclosure suit, or to make any decree against them. (*Eagle Fire Ins. Co.* v. *Lent*, 6 Paige, 637 ; *Corning* v. *Smith*, 2 Seld. 84 ; *Holcomb* v. *Holcomb*, 2 Barb. 22.)

This adverse title consisted of: 1st, the tax title, which was offered in evidence, and which was not impeached in any way ; 2d, the grant and patent to Leese, under whom the defendants claimed.

*Volney E. Howard*, also for Appellants, argued the case orally.

*John McHenry*, for Respondent.

I. Appellants contend that they were in possession of the property under adverse title, and that the validity of such title could not be tried in the suit to foreclose the Mowry mortgage.

We answer that, even conceding they had title, they brought it

before the Court by setting it up in their pleadings and afterwards offering it in evidence, and the Court could therefore pass upon it.

This adverse title consists: 1st, of the tax title offered in evidence; 2d, of the grant and patent to Leese, under whom they claim.

[Counsel here argues at length to show that the tax deed is insufficient. But as the Court do not pass upon the question, the argument is omitted.—Rep.]

But, admitting that the tax deed did divest the delinquents of their title, the rights of plaintiff are not affected by it. Mowry mortgaged this property to plaintiff in due form, and Perley purchased afterward with notice, and went into possession of it in 1855, possessed it and enjoyed its revenues until 1858, then allowed it to be sold for taxes to defeat the mortgage lien, and became the purchaser of it himself.

The statement of the facts is the only argument that is required. He was in privity in estate with the mortgagor, and as the mortgagor could not come into Court and set up a title of this description to defeat the mortgage lien, so neither can the appellant, Perley. (*Kelsey* v. *Abbott*, 13 Cal. 618; *Ferris* v. *Coover*, 10 Id. 631; *Clark* v. *Baker*, 14 Id. 612.)

Such deeds rarely make their appearance in a Court of Equity. In that Court a tax title can be looked upon in no other light than as a *novus hospes*. It is out of place, and entitled to no consideration.

II.   As to the grant, we say it does not constitute an adverse title, and defendants are precluded and cannot set it up in this action because of the principles of law established by this Court in its decision in the case of *Clark* v. *Baker* (14 Cal. 613).

The present case is in every essential particular similar to that, and the decision there settles the question of estoppel in favor of Respondent.

The case of *Watkins* v. *Holman*, (16 Pet.) referred to by the Court on the argument, does not conflict with the doctrine laid down in *Clark* v. *Baker*, upon the question of estoppel, and is not

authority against respondent. The doctrine held in *Watkins* v. *Holman,* that the relation of landlord and tenant in no sense exists between the vendor and vendee, and that this is especially the case where a conveyance has been executed; that, in such case, the property having become by the sale the property of the vendee, he has a right to fortify that title by the purchase of any other which may protect him in the quiet enjoyment of the premises, does not apply to the case of mortgagor and mortgagee. Where, however, the conveyance contains a warranty, all relations between the grantor and grantee are not dissolved; for the grantor is bound by his warranty and precluded from denying that his conveyance passed the entire estate. (*Pelletreau* v. *Jackson,* 11 Wend. 110; 14 Johns, 189; 1 Cow. 613; 4 Wend. 622.) Mowry mortgaged the lot in fee simple absolute. This deed of mortgage is as full and conclusive as an absolute conveyance, as was the mortgage in *Clark* v. *Baker.* Had Mowry lived, he would, under the decision in *Clark* v. *Baker,* have been compelled to acquire the Leese & Vallejo title, and that title so soon as acquired would have been covered by the mortgage; and the defendants stand in his shoes in this respect.

FIELD, C. J. delivered the opinion of the Court—COPE, J. concurring.

The object of the suit to foreclose a mortgage, under our law, is to obtain the sale of the estate which the mortgagor held at the time he executed the mortgage, and the application of the proceeds of the sale to the payment of the demand, for the security of which the mortgage was given. All persons who are beneficially interested, either in the estate mortgaged or the demand secured, are proper parties to the suit. This rule, as a general thing, will only embrace the mortgagor and mortgagee, and those who have acquired rights or interests under them. Where prior incumbrancers are made parties, it is only for the purpose of liquidating the amount of their demands, and paying them out of the proceeds of the sale. Adverse titles to the premises held by parties claiming by conveyance from the mortgagor prior to the mortgage, or from third parties prior or subsequent to the mortgage, are not the

31

proper subjects of determination in the suit. Such titles must be settled in a different action, giving rise, as they generally do, to questions of purely legal cognizance. (*Eagle Fire Co.* v. *Lent*, 6 Paige, 637 ; *Corning* v. *Smith*, 2 Seld. 82 ; *Holcomb* v. *Holcomb*, 2 Barb. 23.) The foreclosure operates, except in a single instance, only upon the estate or interest which the mortgagor possessed at the time, and the sale under the decree passes, with the like exception, only such estate or interest. The exceptional instance, to which we refer, arises where the mortgagor has, subsequent to the execution of the mortgage, acquired a title which enures, by way of estoppel, to the benefit of the mortgagee. In such case, the foreclosure operates upon the subsequently acquired title to the same extent as if originally held by the mortgagor, and the sale under the decree passes it. In all other cases, the estate mortgaged is the only estate brought under the consideration of the Court, and the only estate affected by its decree. (*Clark* v. *Baker*, 14 Cal. 612.)

In the present case, the defendants, Howard, Perley, Gould and Smith, who alone appeal from the decree, set up in their answer title to a portion of the mortgaged premises, under a grant from the former Mexican Government, bearing date in May, 1839, and a patent of the United States, issued upon its confirmation, in March, 1858, and also under a deed executed by the Tax Collector of the city and county of San Francisco, upon a sale for unpaid taxes for State and county purposes, for the fiscal year ending in June, 1856. On the trial, they produced the patent, and traced title thereunder to the defendants Howard and Perley. They also produced the tax deed, and traced title thereunder to Perley. The record does not disclose any evidence of title in either Gould or Smith under the patent or the tax deed. Of the value of the titles conferred by those instruments, it is unnecessary to express any opinion. Their validity is not the proper subject of determination in the present suit. It is only necessary to look into them so far as to see that they are asserted in good faith, and are not mere pretenses for delay ; and this being seen, the rights of the defendants Howard and Perley should have been reserved in the decree. If there were no other reasons than the assertion of these adverse

titles for making them parties, the suit should have been dismissed as to them. But there were other reasons. Mowry, the mortgagor, subsequent to the mortgage, sold and conveyed all his right, title and interest in the premises to Sawyer, and Sawyer quitclaimed a portion of the premises to Howard, Perley and Thorne, and the balance to Perley alone. Thorne subsequently conveyed his interest to Gould and Smith. The appellants thus succeeded to whatever estate the mortgagor possessed, and as such successors were proper and necessary parties to the foreclosure. (*Goodenow* v. *Ewer*, 16 Cal. 461; *Boggs* v. *Hargrave*, Id. 559.) The estate thus acquired, whatever it may have been, was subject to foreclosure and sale under the decree of the Court. This the appellants do not question; but Howard and Perley, who claim under the patent and tax deed, insist that they are not estopped by the acceptance of the quitclaim of Sawyer from denying that he ever possessed any estate—that is, title or interest in the premises—and from showing that the legal title derived from an independent and paramount source was in fact in them at the time; and in this position they are undoubtedly correct. The evidence of Sawyer shows that at the time he executed the quitclaim, Howard, Perley and Thorne claimed to hold an adverse title to the premises, and demanded possession, and threatened a suit in ejectment against him, and that with his conveyance he acknowledged their title. It is not material that such threat was made, or acknowledgment had, but they furnish an illustration of the good sense of the rule which permits a vendee to dispute the validity of the title of his vendor. Parties possessing undoubted titles may often find it to their interest to buy out settlers and trespassers on their premises rather than incur the delay and expense of establishing their rights by litigation. It would be strange if, under such circumstances, they should be estopped from denying the title of the grantors; and if a grantor had previously executed a mortgage upon the premises, that their rights under their previous titles were subordinate to those of the mortgagee. The law does not even look that way. A quitclaim deed only purports to release and quitclaim whatever interest the grantor possesses at the time. He does not thereby affirm the possession of any title, and he is not precluded from subsequently ac—

quiring a valid title and attempting to enforce it. If he does not possess any title, none passes; and he may subsequently deny that any passed without subjecting himself to any imputation of a want of good faith. So, too, a grantee in a quitclaim may deny that he received any estate by the conveyance. (*Sparrow* v. *Kingman*, 1 Coms. 242.) More than this, a grantee in fee may deny that his grantor had any title. With the execution of the conveyance the transaction between the parties is closed. Thenceforth the grantee holds the property for himself, and is neither bound to surrender possession to his grantor, nor to maintain the validity of his title. In *Osterhout* v. *Shoemaker*, (3 Hill, 518) Mr. Justice Bronson, in delivering the opinion of the Supreme Court of New York, said: "There is no estoppel where the occupant is not under an obligation, express or implied, that he will, at some time or in some event, surrender the possession. The grantee in fee is under no such obligation. He does not receive the possession under any contract, express or implied, that he will ever give it up. He takes the land to hold for himself, and to dispose of it at pleasure. He owes no faith or allegiance to the grantor, and he does him no wrong when he treats him as an entire stranger to the title." And in *Sparrow* v. *Kingman*, (1 Coms. 253) Mr. Justice Wright, in delivering the opinion of the Court of Appeals of the same State, observed that "there is no relation existing between the grantee in fee and his grantor as will raise even an implied obligation on the part of the former against a denial of the title and estate of the latter." (See also to the same effect *Bright's Lessee* v. *Rochester*, 7 Wheat. 548; *The Society for the Propagation of the Gospel* v. *The Town of Pawlet*, 4 Pet. 506; *Watkins* v. *Holman*, 16 Id. 54; *Barker* v. *Salmon*, 2 Met. 32; and *Averill* v. *Wilson*, 4 Barb. 180.)

The case of *Clark* v. *Baker* (14 Cal. 612) is cited by the respondent as authority for the position that the appellants, claiming under the patent of the United States and the tax deed, are estopped from asserting their title against the title of the mortgagor. We do not understand the decision in that case as sustaining the position. The facts were these: Clark, without having the legal title, conveyed to Baker certain premises; Baker, to secure the purchase

San Francisco *v.* Lawton.

money, mortgaged them back to Clark. The conveyance and mortgage were simultaneous acts, and both purported to be of the premises in fee. Subsequently, Baker purchased the outstanding legal title, and executed a second mortgage to Touchard. This last mortgage Touchard foreclosed without making Clark a party ; and the purchaser at the sale under the decree claimed to hold adversely to Clark, and not in subordination to the first mortgage. The Court held, that the thirty-third section of the act concerning conveyances applied to mortgages equally as to conveyances absolute in their form ; and that by its provisions the mortgage of Baker, being of the premises in fee, operated upon the outstanding title, afterwards acquired, as effectually as if it had been originally possessed by him ; in other words, that the subsequently acquired title enured to the benefit of the first mortgagee, and that the purchaser under the second mortgage took in subordination to him. And the Court also held that the mortgagor was under obligation, from the nature of the mortgage contract, to preserve the property pledged for the purposes of the original security, and hence on grounds of public policy, and to insure good faith and fair dealing, was estopped, independent of any covenants of warranty, from denying the existence of the lien which he had attempted to create, or defeating its enforcement against the property upon which it was placed, and that parties claiming under the mortgagor were equally estopped ; in other words, that the mortgagor could not, nor those claiming under him, set up to defeat the mortgage, the title which he had subsequently acquired. There is nothing in that case which conflicts with the views we have expressed in this opinion. Here the mortgagor has acquired no outstanding title which enures to the benefit of the mortgagee, and the appellants, Howard and Perley, are not setting up any title derived from him to defeat the enforcement of the mortgage upon the property. Whatever estate, if any, they have acquired from him, is as much subject to the mortgage as it was previous to his conveyance to Sawyer. So far as they claim under him, they are estopped equally with him from denying efficacy to the mortgage. But so far as they claim under other parties by an independent title, they are not bound by the mortgage. They can assert any rights which they may possess from

that source against the mortgage, and the conveyance received from the mortgagor. Their rights in that respect should have been saved in the decree, and for the omission in that particular, the decree must be reversed.

There are several other objections taken by the appellants to the action of the Court below, but upon them we express no opinion. With a clause in the decree saving to the appellants their rights under the patent and tax deed, it is not probable that they will feel disposed to press the objections. On the further hearing it will not be necessary to take anew the testimony. The parties can use that already embodied in the transcript, and add such further testimony as they may deem essential to the proper presentation of the case.

Judgment reversed, and cause remanded for further proceedings.