## J. W. BRYAN et al. v. JULIUS EASON.

(Filed 8 April, 1908).

1. **Deeds and Conveyances—Contemporaneous Endorsements—Construction.**

   A deed and two endorsements thereon, executed contemporaneously, each bearing the signature and seal of the grantors, and duly probated and registered together, must be considered as intended for one deed.

2. **Deeds and Conveyances—Construction—Uses and Trusts—Shifting Uses—Habendum.**

   An endorsement on a deed conveying the fee to lands to J. C. and J. V., reserving to the grantors a life estate, with the condition "that in the event either J. C. or J. V. should die leaving no issue living, then the survivor to inherit all the within-described lands, with the conditions within stated," when construed with the deed as one instrument, establishes the maker's intent to convey, and does convey, an estate in fee to J. C. and J. V., with a shifting use to the survivor in case either should die without issue living at his death; and there is no repugnancy between the deed and the endorsement, whether the latter is considered as a last clause of the deed or as the *habendum.*

3. **Uses and Trusts—Limitation of Fee.**

   By a shifting use expressed in a deed a fee may be limited after a fee.

4. **Deeds and Conveyances—Uses and Trusts—Femes Covert—Probate Defective — Quitclaim — Registration — Seizin — Consideration.**

   E., the owner of land, joined with her husband in the conveyance thereof, and after the death of her husband executed and delivered another deed to the same parties for the land, which expressly referred to the first deed, stating in the premises that it was executed to carry out more effectually the intention and purpose thereof, and reciting that it was made in consideration of said premises and one dollar: *Held,* (1) that as the first deed of E. was in effect as recited in the premises of the second deed after the death of her husband, she was the owner of the land in fee, and the fact that the deed from herself and husband was void because of a defect in the probate would not affect the interests thereunder acquired as between the parties, as the second deed was sufficient to pass the title; (2) that the registration laws now take the place of livery of seizin, and, when they are complied

with, a failure of consideration between the parties under the
first deed did not operate to defeat the vesting of the use. (The
nature and effect of a quitclaim deed operating as an estoppel
discussed by WALKER, J.).

5. **Deeds and Conveyances—Femes Covert—Husband's Subsequent
   Execution—1857—Void Probate.**
     The probate of a deed made by a *feme covert* in 1857 of her
   lands is defective when her acknowledgment and privy examina-
   tion were taken before the execution by her husband was proved.

6. **Deeds and Conveyances—Quitclaim—No Title—Grantor Not Es-
   topped.**
     A grantee is not estopped to show that no interest passed to
   him under a quitclaim deed when the grantor is not estopped to
   show it. Estoppels must be mutual.

ACTION tried before *Jones, J.,* at March Term, 1907, of
JOHNSTON.

This proceeding was brought before the Clerk for the par-
tition of land and transferred to the Superior Court for trial
upon the issues raised by the pleadings. It was referred to
Hon. F. A. Daniels, from whose findings of fact it appears
that, on 12 August, 1857, Betsy Eason, being the owner of
the tract of land described in the petition, joined with her
husband, John Eason, in the execution of a deed for the same
to their sons, Julius C. Eason and John V. Eason, by which
they conveyed to them the said tract of land in fee, reserving
a life estate to themselves. At the same time they made the
following endorsements on the deed:

"Witnesseth further, that in the event either of our sons,
Julius C. or John V. Eason, should die leaving no issue in
wedlock born and living, then and in that event the surviving
brother to inherit all the within-described lands, with the con-
ditions within stated.

"In testimony whereof, the said John and Betsy Eason
have hereunto set our hands and seals. This the 12th day of
August, 1857.                    "JOHN EASON,    [Seal.]
                                 "BETSY EASON.   [Seal.]"

"And it is further declared and intended by us both, whose names are hereunto assigned, that the said Julius C. and John V. Eason are to inherit the said described lands, and not to be accounted for in any future distribution of our estate of whatsoever kind, but each to share alike outside of said lands.   This 12th day of August, A. D. 1857.

"JOHN EASON,      [Seal.]

"BETSY EASON.      [Seal.]"

The execution of the deed and the endorsements was attested by the same witnesses.   It further appeared that the acknowledgment and privy examination of Betsy Eason were taken 2 September, 1857, before two justices of the peace appointed by the County Court, and the execution as to John Eason, her husband, was proven by one of the subscribing witnesses at February Term, 1858, of that court, and the deed ordered to be registered.   The certificate of acknowledgment and privy examination of Betsy Eason expressly mentioned the endorsements on the deed.   The certificate of probate as to John Eason refers to the instruments as the "deed and conveyance."   The deed and endorsements were duly registered.

John V. Eason, on 5 February, 1874, executed to Julius C. Eason for the recited consideration of one dollar a release or quitclaim deed for his right, title and estate, it being the one-half interest of J. C. Eason in the land as described in the deed of 12 August, 1857.   The quitclaim deed was duly proven and registered 11 August, 1876.

Betsy Eason, widow of John Eason, on 2 June, 1883, conveyed to Julius C. Eason and his heirs all her real estate in Sampson County (including the lands described in the deeds of 12 August, 1857, and 5 February, 1874), "in trust, to hold the same for the use of himself and his heirs and his brother, John V. Eason, and his heirs," provided "that if either should die without leaving issue at his death the portion so held in trust for him shall be held to the use of the

other and his heirs." This deed conveyed a part of the said lands to each of the brothers by metes and bounds, and further provided that the part held in trust by Julius C. Eason for his brother, John V. Eason, should be subject to a life estate which was reserved to the mother, Betsy Eason. The deed expressly refers to the deed of 12 August, 1857, and it is stated in the premises that it was executed to carry out more effectually the intention and purpose of John and Betsy Eason in making the said deed, and further recites that it was made in consideration of the said premises and one dollar. It further appeared that the interest of John V. Eason in the land in excess of his homestead was sold under execution against him by the Sheriff, 13 March, 1900, and bought by Julius C. Eason at the price of $125, and a deed was executed to the purchaser, which was duly proven and registered. Julius C. Eason announced at the sale and before the land was sold "that it belonged to him at the death of his brother, John V. Eason." The latter was about fifty years old at the time, had been married many years and had no children. He died intestate and without issue in November, 1900, leaving a widow, Kate Eason, and the other plaintiffs and the defendant as his heirs at law. Betsy Eason died in 1892, before this proceeding was commenced.

The referee concluded as matters of law:

1. That the deed of 12 August, 1857, is inoperative and void, as it had not been properly probated, and the defective probate had not been cured by any statute; but if it is valid, the endorsements are integral parts of the deed, the same as if they had been written into it, and that the deed, thus considered, conveyed the land to the defendant, J. C. Eason, and his heirs, if he survived his brother, and the latter died without issue living at the time of his death.

2. That the quitclaim deed did not estop Julius C. Eason from asserting title to the interest in the land now claimed by the petitioners.

3. That Julius C. Eason, by virtue of the Sheriff's sale and deed, acquired the interest of John V. Eason in the land, whether a life estate or fee simple, under the deed of 12 August, 1857, if valid, and that there is no evidence of any suppression of biddings to render the Sheriff's deed invalid.

4. That the defendant, Julius C. Eason, is sole seized of the land in controversy, and the petitioners, other than Kate Eason, have no interest therein, but that she is entitled to dower in the original share of John V. Eason.

The petitioners filed numerous exceptions to the report, which were all overruled by the court, and the report in all respects was confirmed, the court holding with the referee that Julius C. Eason is sole seized of the land, subject to the dower of Kate Eason, widow of John V. Eason.

Judgment was entered accordingly, and the petitioners appealed.

*F. H. Brooks* for plaintiffs.
*W. C. Munroe* for defendant.

WALKER, J.   The first question to be determined is as to the effect of the three paper-writings executed by John and Betsy Eason, 12 August, 1857.   Do they all constitute one deed, or is the first of the writings to be treated as separate and distinct from the others and to be regarded as a deed conveying the land in fee to Julius C. and John V. Eason in severalty, each taking the part allotted to him?   These writings were all executed at one and the same time and, in our opinion, must be considered together as intended to be one deed.   *Helms v. Austin,* 116 N. C., 751.   But whether this is so or not, the three instruments express the true intent of the parties, and, upon the allegation of the answer that the purpose was to convey the land to Julius C. and John V. Eason in fee, with a proviso that if either of them should die without issue living at the time of his death his share should go to the other, we would, upon a bare inspection, so reform

the first instrument as to express what was unmistakably the
real intention of the parties. *Vickers v. Leigh,* 104 N. C.,
248; *Helms v. Austin, supra.* The makers of these instru-
ments evidently intended that they should be considered as
parts of one indivisible transaction and have the force and
effect of conveying the estate as above indicated, the same as
if the words of limitation had been contained in one deed.
This construction of the instruments as one deed conveying
an estate in fee to the brothers, Julius C. and John V. Eason,
with a shifting use to the survivor in case either should die
without issue living at his death, does not produce any repug-
nancy in the different clauses of the deed. It is contended
by the learned counsel for the plaintiffs that the first of the
endorsements should be treated as a last clause in the deed.
*Wilkins v. Norman,* 139 N. C., 40. But we do not think so.
As the purpose of the parties is manifest, the limitation in
the endorsement should be so inserted as to effectuate it; but
even if treated as a last clause in the deed a repugnancy
would not arise between it and what precedes in the premises
and *habendum.* We do not think such repugnancy would in
law be the result. The case of *Rowland v. Rowland,* 93
N. C., 214, is a direct and conclusive authority against such
a construction of the deed, if it were read as the plaintiffs
insist it should be. There the limitation in the premises was
by John S. Rowland to his two children, John and Ophelia,
and to the heirs of each of them forever, and in the *habendum*
to the said John and Ophelia and their heirs as aforesaid, as
tenants in common, and, upon the death of either of them, to
the survivor and his or her heirs forever. The Court said,
according to Blackstone (Vol. II, p. 298), that the office of
the *habendum* is to lessen, enlarge, explain or qualify the
premises, but not to contradict or be repugnant to the estate
granted therein. If an estate is given to one and his heirs
in the premises, *habendum* to him for life, there is a repug-
nancy, and the fee is not divested or turned into a life estate

by the *habendum;* but if an estate is given to one and his heirs, *habendum* to him for the life of another, there is no repugnancy, for, as the estate may endure beyond the life of the grantee—that is, during the life of the *cestui que vie*—the heir may take and hold after the death of his ancestor as a special occupant during the time for which the estate is limited—that is, during the life of the *cestui que vie.* Other illustrations might be given as showing how the word "heirs" used in the premises may be qualified and explained in the *habendum* or subsequent part of the deed without producing any repugnancy. So, in *Rowland v. Rowland, supra,* the Court, when construing a proviso similar to the one we are now considering, said: "After giving effect to the operation of the *habendum* as maintained by the authorities cited, the question is still presented, Does the estate, upon the death of Ophelia, pass to the *survivor* or go to her heirs generally? We are of the opinion it did pass to John B. Rowland as *survivor* by the operation of a shifting use. The deed is a covenant to stand seized to uses. Its effect was to transfer the use to the two donees in fee, and upon the death of Ophelia to shift the use of her moiety to John and his heirs. By a shifting use a fee may be limited after a fee. 2 Blackstone, p. 334; *Smith v. Brisson,* 90 N. C., 284." See *Rowland v. Rowland,* 93 N. C., 220.

Having arrived at the conclusion that the contemporaneous writings executed by John and Betsy Eason, 12 August, 1857, constitute but one instrument in law, to be considered as if all their provisions had been inserted in the first of the writings, and that by a proper construction of them the land was conveyed to the uses declared by the grantors, it would seem to be unnecessary to decide whether the defective probate of these instruments was cured by the Acts of 1893, ch. 293; Revisal, sec. 1017. The acknowledgment and privy examination of the wife having been taken before the execution was proved as to the husband, the probate was defective under

the law then existing. *Burgess v. Wilson,* 15 N. C., 360; *Pierce v. Wanett,* 32 N. C., 446; *McGlenery v. Miller,* 90 N. C., 215; *Ferguson v. Kinsland,* 93 N. C., 337; *Souther-land v. Hunter,* 93 N. C., 310. If the defective probate is cured by subsequent legislation, Julius C. Eason, as the survivor of the two brothers, the other having died without having issue living at his death, succeeded to the latter's interest in the land. But if the probate is not validated and the deed of 1857 is consequently void, he would succeed to his brother's interest in the same way under the deed of 1883, as the limitations under the two deeds are substantially the same. In other words, if Julius C. Eason acquired nothing under the deed of 1857 because of the defective probate, the entire estate remained in his mother, and she, by the deed of 1883, conveyed it to her two sons, so that Julius, by the death of his brother without issue, acquired the same estate as he would have taken under the deed of 1857, had it been valid.

In view of the construction placed by us upon the deed of 1857, it is also useless to consider the effect of the quitclaim deed and the deed of the Sheriff, as it must be that whatever interest Julius C. Eason did not acquire under either of them passed to him under the deed of 1883.

The plaintiffs also contended that the deed of 1883 is void for want of a sufficient consideration to raise a use in favor of Julius C. and John V. Eason, because the statute of uses converts into a legal estate the use which was before only an equitable interest, and equity would enforce no use where there was not either a good or a valuable consideration to support it. But this doctrine does not apply since the statute concerning the registration of deeds, registration now taking the place of livery of seizin. It is for that reason said by the Court in *Rowland v. Rowland,* 93 N. C., at p. 221: "Our courts, in their policy of relaxing the rigid and technical rules of the common law, have since extended the construction so as to bring all of our deeds of conveyance within the purview

of that statute.    Thus it has been held that deeds of bargain
and sale and covenants to stand seized to uses are put on the
same footing with feoffments at common law, with respect to
seizin, the declaration of uses thereon and the consideration."
And in *Love v. Harbin,* 87 N. C., 252, the Court said:
"Whatever may once have been our opinion upon the subject,
it is now the settled rule in this State that, by reason of the
efficacy which the statute gives to the fact of their registra-
tion, all deeds are put upon the footing of feoffments, which
take effect by livery of seizin and need no consideration as
between the parties to support them."    See, also, *Hogan v.
Strayhorn,* 65 N. C., 279; *Ivey v. Granberry,* 66 N. C., 223;
*Mosely v. Mosely,* 87 N. C., 69; *Cheek v. Nall,* 112 N. C.,
370.    These authorities support the deed of 1883, even if it
cannot be sustained as a covenant to stand seized to the uses
declared therein, under *Cobb v. Hines,* 44 N. C., 343; *Bruce
v. Faucett,* 49 N. C., 391, and cases of that class.

The quitclaim deed did not estop Julius C. Eason to deny
the title of plaintiffs.    "It is elementary learning that a quit-
claim deed operates as a release only of such interest as the
maker has or as may be specifically named.    It is for this
reason that no estoppel grows out of such a deed.    Nothing
in respect to the maker's interest is asserted.    The very terms
of the deed put the purchaser upon notice that he is buying
a doubtful title.    'In form a quitclaim deed is like the com-
mon-law release—a derivative or secondary common-law
form.    In substance it is similar to an original common-law
deed, creating an estate and not requiring for its operation any
estate in possession or otherwise in the grantee.    In effect it
transfers to the grantee whatever interest the grantor has in
the property described, be it a fee, chattel interest, a mere
license or nothing at all.'    9 Am. and Eng. Enc., 104.    It
implies a doubtful title in the party executing it."    *Lumber
Co. v. Price,* 144 N. C., 53; *Hallyburton v. Slagle,* 132
N. C., 947.    It is not an estoppel upon the grantee so as to

preclude him from denying that he received any estate by the deed or from setting up rights under superior titles. *San Francisco v. Lawton,* 18 Cal., 465 (79 Am. Dec., 187). "If the grantor, then, might show that no title passed by his quitclaim, and recover the land in opposition to it, why should the mouth of his grantee be closed from denying that he received an estate in fee from him or that, indeed, any title passed by his conveyance? Apply the rule of mutuality and it is impossible to assign a valid reason. Both parties must be bound or intended to be, else neither is concluded. There can be no soundness in the principle of estopping a grantee from showing that no interest passed to him by the deed of the grantor, while the latter is permitted to show it." *Sparrow v. Kingman,* 1 N. Y., 248. But in the view we take of the case it does not appear how the question involved can be affected in any way by an estoppel under the quitclaim deed.

We are of the opinion, upon a consideration of the whole case, that the conclusion of the referee and the judgment affirming the same were correct.

Affirmed.