JOHN T. HOGAN *v.* ROBERT P. STRAYHORN.

Where a debtor executed a deed conveying a tract of land in trust to pay specified debts, and it was provided in the deed in which no money consideration was recited, that if the debts were not paid on or before a particular day the trustee should sell the land and "pay off and discharge all costs and charges for the drawing and execution of this trust," and, the debts not having been paid, the trustee did sell the land and pay them out of the proceeds, *it was held*, that the deed in trust not being upon a valuable consideration there was a resulting use for the grantor, subject however, to a *scintilla juris* in the trustee sufficient to feed the contingent use that might be created by an exercise of the power of sale, and that when the sale was made, and the purchase money was received by the trustee and paid to the creditors mentioned in the trust, the purchaser acquired a good title against the grantor and his other creditors.

The doctrine of conveyances at the common law and under the Statute of Uses, 27th Henry 8th, and also under our Act of 1715, (1 Rev. Stat. ch. 37, sec. 1, Rev. Code, ch. 37, sec. 1,) which enacts that all deeds for land proved and registered in the county where the land lies "shall be valid, and pass estates in land, without livery of seizen, attornment, or other ceremony whatever," discussed and explained.

The cases of *Harrell* v. *Watson*, 63 N. C. Rep. 454, *Smith* v. *Smith*, 1 Jones 155, *Ingram* v. *Kirkpatrick*, 4 Ire. 462, and *Martin* v. *Cowles*, 1 Dev. & Bat. 29, cited and approved.

This was a civil action to recover a tract of land, submitted to his Honor, *Judge Tourgee*, in the Superior Court of ORANGE County, in January, 1870, upon a case agreed.

Calvin G. Strayhorn was the owner of the land in question, and both parties claim title under him. He became a bankrupt, and on the 4th of May, 1868, all his interest in the land was conveyed to his assignee, E. B. Lyon, who on the 26th day of February, 1869, sold and conveyed it to the plaintiff, John T. Hogan, who claims it under that deed.

Prior to the time when the said Strayhorn became a bankrupt, to-wit: on the the 13th of September, 1866, he made and delivered to George Laws a deed in trust for the same

land which was duly proved and registered, the material parts of which deed are as follows :

This deed made, &c., witnesseth that whereas, Calvin G. Strayhorn is justly indebted to Robert P. Strayhorn, as his guardian, in the sum of $1,300, and to F. & J. T. Strayhorn in the sum of $1,080, due by bond, &c., and whereas, the said Calvin G. Strayhorn is honestly desirous of securing the payment of said sums of money ; he, the said C. G. Strayhorn, hath this day given, bargained and sold, &c., to the said George Laws and his heirs, a certain tract or parcel of land, in Orange County, on the waters of Stone's Creek, &c., to have and to hold the said land in special trust and confidence, nevertheless that the said Laws will hold, keep and use the same as hereinafter directed.    If the said C. G. Strayhorn shall on the 1st day of August have paid off and fully discharged all of the aforesaid debts with interest, then this indenture is void and of no effect.    If, however, he shall not have paid the said debts, then it shall be the duty of the said George Laws to advertise and sell on such time and terms as the said Robert and William F. Strayhorn and the trustee shall agree upon.    It shall be the duty of said trustee to pay off and discharge all costs and charges for the drawing and execution of the trust.

The said George Laws, afterwards and prior to the bankruptcy of the said C. G. Strayhorn, sold and conveyed the land to the defendant, Robert P. Strayhorn, who claims title under his deed.

At the date of the deed in trust from the said C. G. Strayhorn to Laws, he, the said Strayhorn, was indebted to a number of other persons whose debts were not mentioned in the deed to Laws, and were unpaid when he filed his petition in bankruptcy.

On the argument of the case it was contended for the plaintiff that the deed in trust from C. G. Strayhorn to Laws was inoperative and void, especially as against the

other creditors of Strayhorn. First, for want of a money consideration from Laws to said Strayhorn; and secondly, because the said deed makes no appropriation of the proceeds of the land, when sold by Laws, further than for the costs and charges of the drawing and execution of the trust.

For the defendant it was admitted that the case turned upon the points taken for the plaintiff, but his counsel contended that the said deed was good and sufficient, and did pass the title, because, first, the deed passed the land to Laws; and secondly, that it was a declaration of trust by C. G. Strayhorn upon which Laws became trustee for the creditors named in the trust.

His Honor, after hearing the argument on both sides, was of opinion with the plaintiff on both points taken for him, and ordered a judgment to be entered accordingly, from which the defendant appealed.

*Battle & Sons* and *Norwood*, for the plaintiff.
*Phillips & Merrimon* and *Strayhorn*, for the defendant.

PEARSON, C. J. The plaintiff derives title from the Assignee in bankruptcy, who represents the creditors of Calvin Strayhorn. To resist a recovery it is necessary for the defendant to maintain two positions:

1. The deed of Calvin Strayhorn to Laws passed the title.
2. The deed makes a valid declaration of trust.

As to the first, the objection to the deed is, that it is not supported by a valuable consideration from Laws to Calvin Strayhorn. Treating it as a deed of bargain and sale, this objection would be fatal; but under the maxim, *ut res magis valeat quam pereat,* an instrument which can not have effect in one form, will be supported in another; provided, that meets the difficulty, and sufficient words are used. For instance, a deed in the form of a covenant is allowed to operate as a grant; a deed purporting to be a bargain and sale,

as a covenant to stand seized ; and either of these as a deed at common law if that will answer the purpose. An instrument in the form of bargain and sale, purporting to pass a remainder after a life-estate in land, but inoperative for want of a valuable consideration, will be allowed the effect of passing the remainder as a deed at common law, which does not require a consideration, *Harrell* v. *Watson*, 63 N. C. R. 454, and operates to pass remainders, reversions, rights of way and other easements, and any incorporeal hereditament ; the solemn act of delivery being accepted in lieu of " livery of seizin," which can not be made of things incorporeal. This principle could not be applied to deeds accompanying feoffments, or deeds of feoffment as they were termed, to supply the want of livery of seizin ; for the reason that the land passed by the livery of seizin, and not by the deed ; for, although after the introduction of contingent remainders, springing and shifting uses, powers of appointment and conditional limitations, a deed always accompanied the livery of seizin, it was held that the freehold passed by the livery, an act of notoriety, and not by the deed, which served only the secondary purpose of a memorial of the limitations of the estate, and declarations of uses which were too complicated to be trusted to the memory of witnesses.

The ceremony of making livery of seizin was in its original very imposing. The parties went upon the land, and the tenant, in the presence of the freeholders of the manor, delivered *the soil* to the feoffee, by handing to him a twig, or clod of dirt, in the name of the whole ; by which act, notoriety was given to the fact that the one had ceased to be tenant, and the other had taken his place. After it became necessary to have a deed to accompany the livery of seizin, this mode of conveyance was both expensive and inconvenient, and upon the passage of the Statute of Uses, 27 Hen. viii, the conveyance by deed of bargain and sale was substituted for it in all cases not requiring limitations of the es-

tate, or a declaration of uses. This was also expensive by reason of the statute of enrollments, and the conveyance by lease and release took the place of bargain and sale.

A conveyance by transmutation of possession, to-wit : feoffment, was only used when the estate was to be limited by way of contingent and cross-remainders, or family relations called for a declaration of contingent uses and powers of appointment. Fines and common recoveries, which are called feoffments of record, were only used when it was necessary to bar contingent estates that might spring out of some former conveyance, and thereby free the land from the complication of title incident thereto.

The Legislature of the colony of North Carolina, in 1715, seeing the expense and inconvenience of requiring the ceremony of livery of seizin, by which the parties were required to go upon the land, in a sparsely-settled country, enacted that "no conveyance or bill of sale for land shall be good, unless the same shall be acknowledged, &c., and registered in the County where the land lies," and "*all deeds so done and executed shall be valid and pass the estates in land without livery of seizin*, attornment, or other ceremony in the law, whatsoever." Rev. Stat. ch. 37, sec. 1 ; Rev. Code, ch. 37, sec. 1. The object of this statute manifestly is to dispense with the ceremony of livery of seizin, to substitute registration of the deed in lieu thereof, and to allow title to be passed by the deed, which before had accompanied the livery of seizin, without that expensive and inconvenient ceremony. To a plain man it must be a matter of surprise how any question ever could be made as to the validity of a deed, or " bill of sale for land," executed and registered in pursuance of this statute. The reference to the old mode of conveyance by livery of seizin, accompanied by deed of feoffment, was made to explain this matter, and the explanation will be made full by the fact that in the colony and in the State of North Carolina, sales and conveyances of land

have been simple and free from all complication by reason of contingent and cross remainders, and declarations of contingent and shifting uses, although such limitations and declarations of uses are often met with in wills : so that at the first, a conveyance by lease and release, and after act of 1715, dispensing with enrollment and actual indentation of deeds of bargan and sale, and substituting registration in lieu thereof, deeds of bargain and sale, and of covenants to stand seized, have answered every purpose.

It is a remarkable fact that there has been no occasion to be met with in our books, except in one instance, to resort to conveyances operating by transmutation of possession. Indeed the members of the legal profession seem almost to have lost sight of the fact that by the Act of 1715, the deed which before accompanied livery of seizin, is, provided it be duly registered, allowed the effect of passing the title by transmutation of possession, without the ceremony of livery of seizin.

The single instance referred to above where there was a necessity for a conveyance operating by transmutation of possession, is *Smith* v. *Smith*, 1 Jon. 135.    There the maker of a deed of bargain and sale, or of a covenant to stand seized (for it is good either way) attempted to create a power of sale to one who was a stranger to the consideration ; and it is held that the power could only be created by conveyance operating by transmutation of possession.   The Court was not able to give effect to it as a deed under the statute of 1715, because there were no words of conveyance to the stranger who was to exercise the power.   In our case that difficulty is not presented, for the land is given to Laws " to have and to hold, to him and his heirs," and the ceremony of livery of seizin being dispensed with, the deed operates to pass the title under the act of 1715, although it cannot take effect as a deed of bargain and sale for the want of a valuable consideration.

As to the second position: With every disposition, under the maxim *ut res magis valeat quam pereat*, to give effect to the deed, and although we feel satisfied that the omission was caused by the ignorance or mistake of the draughtsman, we are forced to the conclusion that the deed does not make a valid declaration of trust in favor of Robert and William J. Strayhorn. They are taken to be *bona fide* creditors, the deed sets out a desire on the part of the grantor to secure the payment of their debts, it directs the grantee, if the debts are not paid by a day certain, to expose the land to sale on such terms (in reference to cash or credit, &c.,) as he and the said Robert and William J. Strayhorn may agree upon, "to pay off and discharge all costs and charges for the drawing and execution of this trust," and then—omits to say what is to be done with the money: in other words, it omits to make a declaration of trust in favor of the creditors whose debts he had expressed a desire to secure. These words are left out, viz: "and apply the proceeds of sale to the payment of the debts due to Robert and William J. Strayhorn, and the excess, if any, to be paid to Calvin Strayhorn." Thus we have the play of Hamlet with the character of Hamlet omitted. This omission is fatal. The title passed to Laws by force of the deed, but there being no trust declared in favor of creditors, the power to sell is unsupported by a consideration, and must be held voluntary, and of course void against creditors: 13 Eliz; *Ingram* v. *Kirkpatrick*, 4 Ire. 462.

So there was a resulting use in the grantor, which divested the legal estate of the grantee, and revested it in the grantor, and it passed to the assignee in bankruptcy who represents all the creditors.

If A makes a feoffment or (under the statute of 1715) a deed duly registered, for a valuable consideration, the use is in the feoffee or grantee by force of the consideration.

If the feoffment or deed be without consideration, the use

is in the feoffor or grantor, and the legal estate is instantly revested in him by force of the statute, 27 Hen. viii, unless there be a declaration of uses or trusts, or a power to appoint uses be given to a third person, or reserved to the feoffor, in which case so much of the use as is not declared or raised under the power, results to the grantor, and draws to it the legal estate in the " same manner, force and condition that he has the use." This is familiar learning. In our case the legal estate passed to Laws by the deed, but no trust is declared in favor of Robert and William F. Strayhorn, so the use resulted to Calvin Strayhorn.

The suggestion that the trust to pay the cost and expense of making the deed is valid, and prevents the legal estate from passing back to the grantor, has nothing to support it. The power to sell falls, because there is no consideration to support it against creditors, and the incident falls with the principal. The idea that the payment of the cost and expense of making a deed is a sufficient consideration to support it as a trust against creditors, is a legal absurdity.

After the opinion was filed, but before it was out of the control of the Court, the term not having expired, Mr. Phillips called our attention to a point that was not presented on the argument.

The point is this, the power of sale given Laws had the legal effect to prevent the entire use from resulting, so the legal estate vested in him, subject to a *scintilla juris*, to feed the contingent use that might be created by an exercise of the power. 2nd. The valuable consideration paid by the purchaser, had the legal effect to make the deed valid as against creditors.

Upon consideration we are satisfied the point is well taken. In a feoffment without consideration, to such uses as the feoffor may by deed or will appoint, the power qualifies the resulting use, and it only draws back a corresponding quantity of the legal estate, leaving a part of the estate in the

feoffee, to feed the use that may be created by an exercise of the power. So a feoffment to such uses as the feoffee may appoint has the like effect, and a power to sell is a power of appointment. See *Levy* v. *Griffis*, at this term.

It follows that a " *scintilla juris*," as it is termed in the books, was left in Laws to feed the use that was subsequently created by the exercise of the power. *Chudleigh's case*, 1 Coke's Reports, 120 f., and that the resulting use was qualified by the power.

It is equally well settled that if a donee under a voluntary conveyance, make a *bona fide* sale for valuable consideration, before a creditor acquires a lien, the title of the purchaser is valid, as against creditors ; for the consideration in the second deed supplies the want of one in the first. *Martin* v. *Cowles*, 1 Dev. and Bat. 29. And Roberts on Fraudulent Conveyances. In our case the sale being made by Laws under the power, for a valuable consideration before the assignment under which plaintiff claims, and the purchase money having been applied in the liquidation of the very debts which the maker of the deed desired to secure, the purchaser acquired a good title.

Our excuse for not noticing what seems to be familiar learning on the merits of the case, is that the whole argument at bar was devoted to the question, whether by power of the statute, title to land in this State does not pass by deed duly registered without the ceremony of " *livery of seizin*," or the necessity for a consideration which applies only to deeds operating under the statute of uses and not to conveyances operating by transmutation of possession.

Judgment reversed and under the case agreed judgment for the defendant.

PER CURIAM.                    Judgment reversed.