B. G. ROWLAND et al. v. JOHN B. ROWLAND.

*Construction of Deeds—Survivorship—Joint Tenancy—Uses—Habendum.*

1. The act of 1874, does not abolish joint tenancies. It only takes away the right of survivorship from joint tenancies in fee, but has no application to joint tenancies for life.

2. Construction of deeds must be made upon the entire instrument, and so that every part and word of it may have effect, if possible, the purpose of the Court being to ascertain the intention of the parties, and to carry such intention into effect, so far as it can be done consistently with the rules of law.

3. The office of the habendum in a deed, is to lessen, enlarge, explain or qualify the premises, but not to contradict or be repugnant to the estate granted in the premises.

4. Where, by deed, an estate is given to A and B, and to the heirs of each of them in the premises, *habendum* "to the said A and B and their heirs as aforesaid, as tenants in common, and upon the death of either one of them to the survivor and his heirs;" *It was held*, that the deed was a covenant to stand seized to uses, and its effect was to transfer the use to the two donees in fee, and upon the death of one, to shift the use of his half of the land to the other and his heirs.

5. By a shifting use, a fee may be limited after a fee.

(*Vass* v. *Freeman*, 3 Jones Eq., 227; *Powell* v. *Allen*, 75 N. C., 450; *Motley* v. *Whitemore*, 2 Dev. & Bat., 537; *Southerland* v. *Cox*, 3 Dev., 394; *Murchison* v. *Whitted*, 87 N. C., 465; *Kea* v. *Roberson*, 5 Ired. Eq., 373; *Smith* v. *Brisson*, 90 N. C., 284; *Hogan* v. *Strayhorn*, 65 N. C., 279; *Love* v. *Harbin*, 89 N. C., 249; *Ivy* v. *Granberry*, 66 N. C., 223, cited and approved).

This was a SPECIAL PROCEEDING for Partition commenced before the clerk of the Superior Court of ROBESON county, and carried by appeal to the Superior Court, where it was tried before *MacRae, Judge,* at Spring Term, 1885.

The plaintiff complained as follows, to-wit:

1. That on the 25th day of August, 1865, John S. Rowland, the father of the plaintiffs, B. G. Rowland and Eliza W. Fuller, and of the defendant John B. Rowland, conveyed to John B. Rowland, the defendant, and his sister, Ophelia Rowland, also a daughter of said John S. Rowland, five hundred acres of land.

in said county on the west side of Lumber river, the same tract on which said John S. Rowland then resided, and the same lands on which the defendant now resides, by deed, a copy of which is hereto annexed, marked " Exhibit A," which plaintiffs ask may be taken as a part of this complaint.

2. That on the ...... day of November, 1867, the said Ophelia Rowland died in said county intestate, leaving as her only heirs-at-law her brothers and sisters, B. G. Rowland and Eliza W. Fuller of the plaintiffs, the defendant John B. Rowland and Susan S. Rowland.

3. That on the ...... day of May, 1872, the said Susan S. Rowland died intestate, leaving as her only heirs-at-law the said B. G. Rowland, John B. Rowland and Eliza W. Fuller.

4. That the said A. W. Fuller and Eliza W. Fuller intermarried on the 22d day of July, 1858.

5. That the defendant has been in the sole and exclusive enjoyment of the rents and profits of said lands since the death of the said Ophelia, to-wit: in the year 1867.

6. That plaintiffs and defendants are tenants in common of said lands, the said plaintiffs B. G. Rowland and Eliza W. Fuller, being entitled each to one-sixth thereof, and the defendant to two-thirds, or the remainder, and that the plaintiffs desire to hold and enjoy their parts of said land in severalty.

Wherefore they pray that commissioners may be appointed by the Court for the division of said lands, and for such and further relief as to the Court will seem meet and proper.

The deed was as follows:

"This indenture, made and entered into this twenty-third day of August, in the year of our Lord one thousand eight hundred and sixty-five, between John S. Rowland of the one part, and his two children, John B. Rowland and Ophelia Rowland of the other part, all of the county of Robeson and State of North Carolina: Witnesseth, that the said John S. Rowland, for and in consideration of the natural love and affection which he has and bears to his said two children, John and Ophelia, and for their

mutual advancement in life, and for the further and special consideration to provide a certain home for his said daughter Ophelia, who is blind and helpless, has given, granted, bargained, sold, remised, released and forever quit claimed, and does hereby give, grant, bargain, sell, remise, release and forever quit claim unto the said John B. Rowland and Ophelia Rowland, and to the heirs of each of them forever, a certain piece or parcel of land in the county of Robeson aforesaid, on the west side of Lumber river and on both sides of Aaron swamp, situate and bounded as follows: on the north, by Richard Townsend's line; on the west, by said Townsend and John Thompson's line; on the south, by William Price's (now Martha Ann Inman's) and McKellar's lines; and on the east, by McMillan and John Taylor's line, containing five hundred acres, more or less, and being the same tract on which the said John S. Rowland now resides, and which was conveyed by Edmund P. Ashley to said John S. Rowland by deed dated the 22d day of December, 1855, and duly registered in Book D. D., page 604, of the records of deeds in the Register's office of Robeson county. To have and to hold the same to the said John B. Rowland and Ophelia Rowland and their heirs as aforesaid, as tenants in common; and upon the death of either one, then to the survivor and his or her heirs forever."

To which complaint the defendant demurred in the following words:

The defendant demurs to the complaint herein for the ground that it appears upon the face of the complaint—

1. That the said defendant is seized in fee simple of all the land described in the said complaint.

Wherefore the defendant prays the judgment of the Court that this action be dismissed at the plaintiff's cost.

The following proceedings were had before the Clerk: "This cause coming on to be heard on the complaint and demurrer, both parties being represented by counsel, the demurrer was sustained. Judgment accordingly. Appeal craved by the

plaintiff, which was granted; notice waived. By agreement of counsel original papers to be sent up."

From this judgment the plaintiffs appealed to the Judge of the Superior Court, who at the Spring Term, 1885, of said court, rendered the following judgment:

"Judgment of the Clerk reversed. Demurrer overruled. Defendant demurs, *ore tenus*, upon the ground that the plaintiffs in their complaint failed to state that they were tenants in common, and in possession of the land described in the complaint. Demurrer overruled, and Clerk directed to proceed, from which judgment the defendants appealed to the Supreme Court."

*Mr. Frank McNeill*, for plaintiffs.
*Messrs. French & Norment* and *John D. Shaw*, for defendant.

ASHE, J., (after stating the facts as above). The first point presented for our consideration, is the proposition contended for by the plaintiffs' counsel, "that the act of 1784 abolished the *jus accrescendi* in joint estates, and that there is no such thing recognized by our law, as survivorship." But this is a mistake. Joint tenancies were not abolished by the act of 1784. *Vass* v. *Freeman*, 3 Jones Eq., 227, and *Powell* v. *Allen*, 75 N. C., 450—454.

In the latter case, it was held that the act did not abolish joint tenancies, but only took away from such estates, held in fee, the right of survivorship, and that the act had no application to joint estates for life, nor did it have any application to estates given to husband and wife—*Den ex demise Motley* v. *Whitemore*, 2 D. & B., 537—and the reports are full of cases where this Court has given effect to the term *survivor* in numerous cases, and especially in *Vass* v. *Freeman, supra, Southerland* v. *Cox*, 3 Dev., 394; *Murchison* v. *Whitted*, 87 N. C., 465. We have cited these cases, and we might refer to others, where the word *sur-*

*vivor* is used, without being affected by the act of 1784. The term has all the signification and effect since that act that it had before, except in its application to joint tenancies held in fee.

We would not have noticed this subject, if it had not been seriously argued before us, for we think it has no application whatever to this case. The estate created by the deed of J. S. Rowland to Ophelia and John B. Rowland, created in them, by its express terms, a tenancy in common, and the Court cannot in their construction of deeds, do violence to these clearly expressed terms, even for the purpose of effectuating the known intentions of the grantor.

We must assume that the deed was duly registered, as there was no objection to its being offered in evidence.

In the deed in question, the estate is given to John B. and Ophelia Rowland, and to the heirs of each of them; and then follows, after a description of the land, the words " to have and to hold the same to the said John B. Rowland and Ophelia Rowland and their heirs as aforesaid, as tenants in common; and upon the death of either one, then to the survivor and his or her heirs."

In the interpretation of a deed, the first thing to be considered is, to ascertain the intention of the parties, and give it such a construction as will carry out their intention, so far as it can be done consistently with the established rules of law. In *Kea* v. *Roberson*, 5 Ired. Eq., 373, this Court said, "Courts are always desirous of giving effect to instruments according to the intention of the parties, as far as the law will allow. It is so just and reasonable that it should be so, that it has long grown into a maxim that favorable constructions are put upon deeds."

" *Intentio inservire, debet legibus, non legis intentioni*," and as far as it may stand with the rule of law, it is honorable for all Judges to judge according to the intentions of the parties, and so they ought to do—1 Coke, p. 19—and Justice Blackstone in the rules of Interpretation laid down by him, 2 vol., 286, says: " That the construction be made upon the entire deed, and not

merely upon the disjointed parts of it.   *Nam ex antecedentibus, et consequentibus fit optima interpretatio,* and therefore that every part of it (if possible,) be made to take effect, and no word but what may operate in some shape or other—*Nam verba debent intelligi cum effectœ ut res magis valeat quam pereat."*   And in *Jackson* v. *Blodgett,* 16 Johnson, 172, the same rule is announced, "that the construction must be made on the entire instrument, after looking, as the phrase is, at the four corners of it."   See also, 2 Smith's Leading Cases, 466, where numerous authorities are cited upon the subject.

Construing the deed, then, according to the intention, it would seem to follow, that it should be read as giving the land to Ophelia and J. B. Rowland and the heirs of each, as tenants in common, and if either should die, then to the survivor and his or her heirs.   This would be effectuating the intention of the donor; for the declared purpose of the deed was to provide a home for his blind and helpless daughter, and for the benefit of his son John, to the exclusion of his other children.

In any event, the estate was secured to her for life, and if she had survived John, she would have had the entire estate in fee, if the limitation to the survivor can be sustained upon any principle of law.

The plaintiff contends it cannot, and insists that whatever may have been the intention of the donor, it is controlled by the wording of the instrument, and that the construction contended for by the defendant, would contravene a well established rule of construction, that when an estate is given in fee in the premises, it cannot be affected by an *habendum,* which is repugnant to the premises, and that there is such a repugnancy in this case, between the premises and *habendum,* and that being so, the *habendum* is nugatory, and an absolute estate in fee in common was vested in J. B. Rowland and Ophelia, and upon her death her moiety went to John B. Rowland and her other brothers and sisters.

In this view of the effect of an *habendum* in a deed, we do not concur, and although Judge KENT has said it has degene-

rated into a useless form, there are other very high authorities who sustain its operations. For instance, Judge BLACKSTONE in his Commentaries, vol. 2, p. 298, has said: "That the office of the *habendum* is to lessen, enlarge, explain, or qualify the premises, but not to contradict or be repugnant to the estate granted in the premises." And to illustrate what is meant by the repugnancy which will render the *habendum* nugatory, he puts the case where, in the premises, the estate is given to one and his heirs, *habendum* to him for life, for an estate of inheritance is vested in him before the *habendum* comes, and shall not afterwards be taken away and divested by it.

But in Shepherd's Touchstone, p. 200, it is laid down, that "if the *habendum* is to the grantee, to him for the life of another, there would have been no repugnancy, for then the *habendum* is consistent with the grant, and explains it, since the word heirs still have effect." For where an estate is given to one and his heirs for the life of another, the heir may take and hold after the death of his ancestor as a special occupant. The rule of construction in such cases is held to be, that when the estate is given in the premises to one and his *heirs* generally, *habendum* to him and other heirs, the *habendum* may be used to explain the premises, by showing what *heirs* are meant by the grantor, and will not be repugnant—for such explanation is held not to retract the gift in the premises, because the word heirs has still its operation, and by construction, is more conformable to the will and intentions of the donor. This rule of interpretation is clearly announced in Bacon's Abridgment, vol. 1, pp. 434–5, citing in support of the position, Rolle Abr., 838; Coke Lit., 21a, Bro. Tit. Fact, 20; Shepherd's Touchstone, 200.

But after giving effect to the operation of the *habendum* as maintained by the authorities cited, the question is still presented, does the estate, upon the death of Ophelia, pass to the *survivor*, or go to her heirs generally?

We are of the opinion it did pass to John B. Rowland as *survivor*, by the operation of a shifting use.

The deed is a covenant to stand seized to uses. Its effect was to transfer the use to the two donees in fee, and upon the death of Ophelia, to shift the use of her moiety to John and his heirs. By a shifting use, a fee may be limited after a fee. 2 Blackstone, p. 334; *Smith* v. *Brisson*, 90 N. C., 284; and cases there cited, especially, 2 Minor Inst., 265, and Hargrove's note "A," 2 Coke, 271*b*.

But it may be objected, that as the deed is one operating under the statute of uses, no further use can be raised by it, for a use cannot be limited on a use. To this, we have to say, that since the year 1715, our courts have been gradually receding from the rules of the common law in the construction of deeds.

By the act passed that year, it was enacted that the registration of deeds should pass lands without livery of seizin. The construction first put upon this act was, that it only applied to such deeds as operated at common law by livery of seizin. *Hogan* v. *Strayhorn*, 65 N. C., 279. But our courts, in their policy of relaxing the rigid and technical rules of the common law, have since extended the construction so as to bring all of our deeds of conveyance within the purview of that statute. Thus it has been held, that deeds of bargain and sale and covenants to stand seized to uses, are put on the same footing with feoffments at common law, with respect to seizin, the declaration of uses thereon, and the consideration. *Love* v. *Harbin*, 89 N. C., 249, and *Ivy* v. *Granberry*, 66 N. C., 223.

Prior to that statute, and the more recent interpretation upon it, if there was a deed of bargain and sale upon a consideration, the consideration raised a use for the bargainee, and then the statute transferred the legal estate to the use, that is, to the bargainee, but no further use could be declared by the deed, for it was held a use could.not be mounted upon a use. But there is no reason now why it may not be done, since the registration of the deed has all the effect of livery of seizin.

Our opinion is, a defeasible fee in common was given to Ophelia Rowland and John Rowland, and upon the death of Ophelia, the absolute fee vested in John as survivor, because such was the manifest intention of the donor, and because that construction is not in violation of any principle of law or rule of construction.

There is error.   The judgment of the Superior Court is reversed.   The demurrer must be overruled, and the case remanded, that further proceedings may be had, if the parties shall be so advised.

Error.                                         Remanded.