ST. JAMES v. BAGLEY.

(Filed May 16. 1905.)

*Trusts—Grants, How Construed—Trusts, How Created— Construction of Deed.*

1. When it is doubtful whether language in a grant operates as the declaration of trust, the court will examine the entire deed, the relation of the parties, etc., to enable it to gather the intention of the grantor.

2. A grantor can impose conditions and can make the title conveyed dependent upon their performance; but if he does not make any condition, but simply expresses the motive which induces him to execute the deed, the legal effect of the granting words cannot be controlled by the language indicating the grantor's motive.

3.  In order to create a trust, it must appear that the words were in-
    tended to be imperative; and when the property is given abso-
    lutely and without restriction, a trust is not to be lightly im
    posed, upon mere words of recommendation and confidence.

4.  The recital in a deed conveying land to the vestry and wardens of a
    church, that it was made "for the purpose of aiding in the es-
    tablishment of a Home for Indigent Widows or Orphans, or in
    the promotion of any other charitable or religious objects to
    which the property may be appropriated" by the grantee creates
    no trust and the grantee can convey a perfect title.

CLARK. C. J.. dissenting.

CONTROVERSY without action by The Wardens and Vestry
of Saint James' Parish against Thomas P. Bagley, heard by
*Judge O. H. Allen* at the April Term, 1905, of the Superior
Court of NEW HANOVER County.

This is a controversy without action under section 567 of
The Code. The plaintiff is a corporation—wardens and ves-
try of St. James' Parish—organized and existing under the
Laws of North Carolina, with full power to take, hold and
dispose of real and personal property.

On March 29, 1867, Dr. A. J. DeRosset and wife. exe-
cuted and delivered to the plaintiff a deed in words and fig-
ures as follows: "This indenture made this twenty-ninth
day of March in the Year of Our Lord One Thousand Eight
Hundred and Sixty-Seven, between Armand J. DeRosset and
Eliza J., his wife, of the City of Wilmington, State of North
Carolina, of the first part, and The Vestry and Wardens of
St. James' Church, in the Town of Wilmington, of the second
part: Witnesseth, that the said parties of the first part for
the purpose of aiding in the establishment of a Home for
Indigent Widows or Orphans or in the promotion of any
other charitable or religious · objects to which the property
hereinafter conveyed may be appropriated by the said par-
ties of the second part, and in further consideration of One
Dollar to whom in hand paid by the parties of the second

part, the receipt whereof is hereby acknowledged, have granted, bargained and sold, and do by these presents grant, bargain and sell to the said parties of the second part, their successors and assigns all those lots or parcels of land situate in the City of Wilmington aforesaid between Orange and Ann Streets and Eighth and Ninth Streets, being the whole of Block 133, according to the plan of the town of Wilmington, surveyed and prepared by L. C. Turner in 1856, together with all and singular the improvements, privileges and appurtenances to the same belonging or in any way appertaining.

To have and to hold the said described lots or parcels of land to the said parties of the second part and their successors and assigns forever. In witness whereof the said parties of the first part have hereunto set their hands and seals the day and year above written."

Said deed was duly proved and recorded on May 10, 1867, in the office of the Register of Deeds, of New Hanover County. It being suggested that the probate was informal, it was again submitted to probate on March 10, 1905, and again recorded in said county. Upon the execution of said deed plaintiff corporation took possession of the said property and used it for a considerable time for charitable purposes, having thereon a building which was used as a home for elderly women and a school was conducted in connection therewith until the 5th of April, 1896, when the buildings were destroyed by fire and the plaintiff was unable to replace them; for the last several years it has been inconvenient and impracticable for the plaintiff to use it for any purpose. The land is now vacant, unused and of little value to plaintiff. Since the execution of said deed the plaintiff has had continuous, open, actual and adverse possession of the said land, claiming it as its own, against all parties.

Some years ago and subsequent to the burning of the buildings situated on said land some question was made as to

ST. JAMES *v.* BAGLEY.

whether the plaintiff had a title in fee absolute with the power to dispose of the property or any portion thereof. The matter being brought to the attention of Dr. DeRosset, the grantor of said deed, he wrote to the Rev. Dr. Strange, the rector of the Parish, a letter, a portion of which is as follows: "Wilmington, N. C., March 22, 1895. * * * "As the donor of the property 'St. James Home,' I have nothing to say except that it is absolutely the property of the vestry, and may be disposed of as they think proper, without regard to any trust, real or implied, which any one may think is binding upon the vestry in considering the propriety or advisability of alienating the whole or any part of it."

At a meeting of the wardens and vestry of St. James' Parish, held on March 14, 1905, the following resolution was passed: "Resolved that the sale of the property lying between Orange and Ann Streets and Eighth and Ninth Streets, it being known as Block 133, according to the plan of the City of Wilmington, to Thos. P. Bagley, for the sum of $12,000 be confirmed, and it is ordered that the deed for said property be made; that the corporate seal be attached thereto by Thomas D. Meares, Senior Warden, J. Victor Grainger, Junior Warden, and Wm. L. De Rosset, member of the corporation.

The Wardens and Vestry of St. James' Parish, the plaintiff, have constituted and established a trust fund, of which the proceeds of the sale of the aforesaid property is to constitute a large portion, for charitable and religious objects in connection with St. James' Parish, and at a meeting held on March 9th, passed the following resolution: "Moved by Mr. Calder that the net proceeds, together with the amount now standing to the credit of 'St. James' Home Fund,' be placed to a fund to be designated as the 'Armand J. DeRosset Memorial Fund' which, with the income derived from the

St. James v. Bagley.

same, is to be used for the promotion of charitable and religious objects.   Carried."

It is further agreed between the parties hereto that if the plaintiff has and can convey to the defendant a good and indefeasible title, free from all trusts and equities, judgment is to be entered compelling a specific performance of the contract by the defendant and requiring him to pay the purchase price, upon the execution by the plaintiff of a proper deed to him and for costs of the action; but if the plaintiff holds the property in trust and cannot convey a good title, then judgment is to be entered against the plaintiff for costs of the action.

Attached to the facts agreed is the affidavit in accordance with the provisions of The Code.

The controversy having been submitted to *Judge Allen,* the following judgment was rendered: "It is adjudged that the deed from Dr. A. J. DeRosset and wife, dated 29th day of March, 1867, conveyed to the plaintiff a good and indefeasible title in fee, free from all trusts and equities, and the plaintiff now has and is able to convey an absolute and indefeasible title to the defendant for the following described property.   And it is further adjudged that the contract of purchase of said property by the defendant from the plaintiff be specifically performed, and that the plaintiff tender to the defendant a good and sufficient conveyance in fee of said property.   And it is further adjudged that the defendant pay to the plaintiff or its attorneys the sum of $12,000 with interest thereon from the 18th day of March, 1905, the purchase money named in the contract herein set forth, and the costs of action."   From this judgment the defendant appealed.

*Rountree & Carr* for the plaintiff.
*W. B. McKoy* for the defendant.

Connor, J., after stating the facts: There can be no doubt that the grantee is a corporate body with capacity to take and hold the legal title for purposes consistent with its creation and existence, of the land conveyed by Dr. DeRosset, Code, sec. 3665; *Lord v. Hardie,* 82 N. C., 241. It is equally clear that the legal title to the land passed to and vested in the plaintiff corporation by virtue of the deed of March 29, 1867. Whether the deed operates as a bargain and sale sustained by a valuable consideration, or as a feoffment by virtue of our registration laws, Code, sec. 1245, it is effectual to pass the legal title to the plaintiff. *Hogan v. Strayhorn,* 65 N. C., 279; *Ivey v. Granberry,* 66 N. C., 223; *Morris v. Pearson,* 79 N. C., 253. Certainly there is nothing in the deed to indicate a purpose on the part of the grantor to retain any right, title or interest in or control over the land or the uses to which it should be put. It is suggested that the language expressing the purpose which moved the grantor to convey the property should be interpreted as the declaration of a trust for the objects referred to as appealing to his generosity. It is further suggested that these purposes are so indefinite that they are incapable of enforcement and that a resulting trust is raised whereby the plaintiff holds the legal title in trust for the grantor or his heirs. The successful maintenance of this conclusion so contrary to the benevolent purpose of the grantor, is dependent upon the truth of the proposition that a trust is declared and impressed upon the legal title. It must be conceded that it is not necessary for the valid declaration of a trust that any peculiar language be used. Bispham Eq., 71. When it is doubtful whether language in the grant operates as the declaration of trust, the court will examine the entire deed, the relation of the parties, etc., to enable it to gather the intention of the grantor. "The effect of a deed must depend upon the effect of the language used. A grantor can impose conditions and can make the title conveyed dependent upon their

performance.   But if he does not make any condition, but simply expresses the motive which induces him to execute the deed, the legal effect of the granting words cannot be controlled by the language indicating the grantor's motive." 2 Devlin on Deeds, sec. 838; *Mauzy v. Mauzy,* 79 Va., 537. Formerly the rule in England was that whenever property was given coupled with expressions of request, hope, desire or recommendation that the person to whom it is given will use or dispose of the same for the benefit of another, the donee will be considered a trustee for the purpose indicated by the donor.   Such expressions were regarded as *prima facie* imperative.   "But within the last few years the doctrine has changed and the English rule is now that precatory words are *not* to be regarded as imperative unless it is plain from the context that the testator so intended them. *Prima facie,* a mere request, or an expression of hope or confidence, or expectation does not import a command."   Bispham Eq. (6 Ed.), 117.   Mr. Pomeroy says: "Judges have for some time shown a disposition against the doctrine of precatory trusts and a strong tendency to restrict its operation within reasonable and somewhat narrow bounds; many of the earlier decisions would not be followed at the present day.   The courts of this country have generally adopted the doctrine substantially as settled in England although with some caution and reserve and they all exhibit the modern tendency to limit rather than enlarge its scope.   *   *   *   Whether or not a trust has been created in any particular case is entirely a question of interpretation and construction.   The intention must be sought for not only in the precatory words themselves, but also in the terms and qualifications of the gift, the powers of disposition and enjoyment conferred upon the first taker, the nature of the property, the description of the supposed beneficiaries and all the other context."   2 Pomery Eq., 1015-1016.   In *Lamb v. Eames,* 6 Ch. App. Cases, 596, *James, L. J.,* speaking of an attempt to impress

a trust upon the title to property given by a man to his wife, said: "I am satisfied that no such trust was intended and that it would be a violation of the clearest and plainest wishes of the testator if we decided otherwise." In *In re Adams* and the *Kensington Vestry*, L. R. (1884), Ch. Div. 394, *Cotton, L. J.,* said: "I have no hesitation in saying myself that some of the older authorities went a great deal too far in holding that some particular words appearing in a will were sufficient to create a trust. * * * Having regard to the later decisions we must not extend the old cases in any way, or rely upon the mere use of the particular words, but considering all the words which are used, we have to see what is their true effect and what was the intention of the testator as expressed in his will." *Lindley, L. J.,* in the same case said: "I am very glad to see that the current is changed, and that beneficiaries are not to be made trustees unless intended to be so by the testator." The same learned Judge in *In re Hamilton v. Hamilton,* 2 L. R. Ch. Div. (1895), after reviewing the cases, expressly approved what is said in *In re Adams, supra,* and says: "I say in this case we are bound to see that the beneficiaries are not made trustees unless intended to be made so by the testator. * * * You must take the will which you have to construe and see what it means, and if you come to the conclusion that no trust was intended, you say so, although previous judges have said the contrary on some wills more or less similar to the one which you have to construe." In *Hill v. Hill,* 1 L. R. (1897), Q. B. Div., 483, the authorities are again reviewed and those cited approved, when *Chitty, L. J.,* said: "In the case before us the word 'trust' does not occur. A trust may undoubtedly be created by any apt words; but the circumstances that the well understood and obvious term 'trust' is not used seems to me to be worthy of some consideration when the question is whether a trust is or is not intended to be created. Now, it is incumbent on those who claim that there

is a trust, whether created by precatory words or otherwise, to point out with reasonable certainty who are the objects of the trust. These objects must be ascertained from the words used construed reasonably." We have cited at some length the opinions of the learned English Judges to show the uniform current of thought upon the subject. The English and American cases are reviewed by *Mr. Justice Matthews* in *Colton v. Colton,* 127 U. S., 300, in which he adopts the rule as generally followed in the several States stated by *Gray, C. J.,* in *Hess v. Single,* 114 Mass., 56: "It is a settled doctrine of courts of Chancery that a devise or bequest to one person accompanied by words expressing a wish, entreaty or recommendation that he will apply it to the benefit of others may be held to create a trust if the subject and object are sufficiently certain. Some of the earlier English cases had a tendency to give to this doctrine the weight of an arbitrary rule of construction. But by the later cases, in this and in all other cases of the interpretation of wills, the intention of the testator as gathered from the whole will, controls the court. In order to create a trust, it must appear that the words were intended by the testator to be imperative; and when the property is given absolutely and without restriction, a trust is not to be lightly imposed upon mere words of recommendation and confidence." *Bigelow, C. J.,* in *Warner v. Bates,* 98 Mass., 274, says: "That to create a trust it must clearly appear that the testator intended to govern or control the conduct of the party to whom the language of the will is addressed and did not design it as an expression or indication of that which the testator thought would be a reasonable exercise of a discretion which he intended to repose in the legatee or devisee." "The question in all cases is whether a trust was or was not intended to be created, or, in other words, whether the testator designed to leave the application or non-application of the subject matter of the bequest to the designated object entirely to the discretion of the

donee, or whether his meaning was that his language should be deemed imperative and that such discretion should be excluded. This is usually considered by the best authorities to depend upon three things: First, upon the general terms of the will; Second, upon the certainty of the object and Third, upon the certainty of the subject. * * * The determination of the question whether or not discretion has been excluded often depends upon the degree of certainty with which the objects of the supposed bounty are pointed out. If, for example, a gift is bestowed coupled with a suggestion or recommendation that it be applied by the donee to objects which are vaguely and imperfectly described, this vagueness will be regarded by the court as tending to show that the application or non-application of the gift was to be left to the option of the donee. * * * There is however this difference between trusts created by technical words and those raised by expressions of recommendation and request. In the former, if the trust fails for want of certainty in the objects, the trustee will not hold beneficially, but there will be a resulting trust in favor of the donor or his estate; in the latter this uncertainty will, in many instances, take away entirely from the gift its fiduciary character and cause it to vest beneficially in the donee. In the one case a trust is created but fails for want of certainty in its objects; in the other the want of certainty is evidence to show that the donor never intended to create a trust." Bispham 74-75. In *Morice v. Bishop of Durham,* 10 Ves. 536, the Lord Chancellor said: "If neither the object nor the subject are certain, then the recommendation or request does not create a trust; for of necessity the alleged trustee is to execute the deed; and the property being so uncertain and indefinite, it may be conceived the testator meant to leave it entirely to the will and pleasure of the legatee whether he would take upon himself that which is technically called a trust."

"It seems clear that, when the expression or desire in the

will is ever so strong, it will not be construed to create a trust
for others, when the will contains an expression that the de-
visee is nevertheless to be free to act in his own discretion."
Redf. on Will, 418, *Giles v. Anslow,* 128 Ill., 187. Prof.
Pomeroy states the rule: "In order that a trust may arise
from the use of precatory words, the court must be satisfied
from the words themselves, taken in connection with all the
other terms in the disposition, that the testator's intention to
create an express trust was as full, complete, settled and sure
as though he had given the property to hold upon a trust de-
clared in express terms in the ordinary manner." Pom. Eq.,
1016. *Stead v. Mellor,* L. R., 5 Chan. Div. 225; *Bryan v.
Milby,* 6 Del., ch. 208; *Harrison v. Harrison,* Ex. 2 Grat. 1,
44 Am. Dec., 365; *Post v. Moore,,* N. Y., 73 N. E., 482.
We have given the question a thorough examination because
we find no case in our Reports in which it has been discussed
and it is of much importance to the parties in this action
that our opinion be sustained by the best considered modern
authorities. The amount to be paid for the property is
considerable and it is stated in the case that its value con-
sists in the fact that it may be divided into town lots. It
would be unfortunate if any cloud shall hang over the title
when it becomes the home of persons who may purchase and
improve it. With the aid of the general principles which we
find uniformly adopted for ascertaining the intention of the
donor, we entertain no doubt that it was the intention of Dr.
DeRosset to convey the property to the Vestry and Wardens
of St. James' Parish and their successors with full confidence
that they would use it, or dispose of it, and use the proceeds
for the benevolent and pious purposes which moved him to
make the donation. We may take notice of the fact that
Dr. DeRosset was a gentleman of more than ordinary intelli-
gence and we may see from the language used that he was
deeply interested in the welfare of the Parish and the pur-
-pose for which it existed. He evidently knew how to use

language declaring a trust. The order in which the language expressing his motive or purpose in making the deed is found, in the recital rather than following the habendum, where declarations of trust are almost uniformly found, indicates that it was his purpose to avoid expressing a trust, preferring rather to leave the manner of disposing and using the property to the discretion of those in whom he reposed confidence. We also note that Mr. Wright, an eminent and learned member of the bar, is a witness to the deed. We may reasonably infer that he either wrote or was consulted in regard to the deed. The fact that no trust is declared is convincing proof, in the light of the other circumstances stated, that none was intended. He doubtless knew that the property was of value in "aid" of the objects in which he felt an interest and that the extent of its value in those respects depended largely upon giving to the Vestry and Wardens an unlimited discretion. The letter to Dr. Strange shows his deep interest in the welfare of the Parish. It would be doing violence to all rules of interpretation to find in the language used an intention to create an express trust which by reason of its uncertainty would be void thereby defeating the will and intention of the donor. The very uncertainty of the terms used which it is said furnish evidence of a purpose not to create a trust would thus be relied upon to destroy the purpose and place the donor in the singular position of declaring a purpose and in attempting to effectuate it, destroying the power of the donee to do so by creating a resulting trust for himself. By all of the canons of construction and the rules laid down by the courts for ascertaining the intention of the donor, we are brought to the conclusion that no trust is created by the language in this deed. In saying that no trust is created, we of course mean no other trust than is imposed upon all property held by the trustees, or official body representing a Religious Society pursuant to the provisions of sec. 3665 of The Code. The plaintiff held the property for the use of the con-

gregation consisting of the members of the church organized as St. James' Parish, with the right and power to appropriate it to such uses and purposes as the said congregation, acting through its organized agencies, may direct. There is no suggestion that the disposition of the property, or the use to which the proceeds are to be put, is in any manner inconsistent with the provisions of the statute or the wishes of the congregation; on the contrary, it appears that the plaintiff is acting in strict accordance with the wishes of the donor in the establishment of a trust for charitable and religious objects in connection with St. James' Parish. While the letter of Dr. DeRosset to the Rector of the Parish is set out in the case agreed and fully sustains the construction which we have given the deed, we have not called it in aid of our conclusion. The cases which we have found in our investigation generally arose upon the construction of wills. We see no reason why, in the interpretation of language in a deed, the same rules of construction should not apply. We of course recognize the fact that more latitude is taken by courts in construing wills than deeds, but in both the purpose is the same—to ascertain and effectuate the intention of the testator. While the language used by the donor is not, strictly speaking, precatory but rather expressive of motive, the same interpretation should be given it. The real test is whether the language is imperative or leaves the use and disposition of the property to the discretion of the donee. We note also that the heirs, or, if he left a will, the devisees of Dr. DeRosset are not parties to this controversy. We have no doubt that the plaintiff and defendant may without joining any other parties submit the controversy, by complying as they have done with the provisions of The Code, and that they will be bound by the judgment. It is advisable, however, that in cases involving the title to real property all persons having, or who may have, an interest in the subject matter be brought in so that the title may be quieted.

We may not refuse to decide a controversy when properly presented because of the failure to make such parties. We conclude that the judgment of His Honor was correct.

We have refrained from discussing the effect of the language used in the deed which it is supposed creates an express trust or expressing any opinion as to its validity, if construed into a declaration of trust, for the manifest reasons set forth in the opinion. To prevent any possible misconception, we desire to say that we do not concur in the suggestion that the language if so construed would not be valid as the declaration of an enforcible trust. One of the elements of a religious or charitable trust is its uncertainty. The courts have endeavored to sustain and give effect to the intention of the donors in such cases and prevent a failure of their benevolent purposes. The case of *Tilden v. Green,* 130 N. Y., 29 was decided by a divided court, three of the seven judges joining in a very strong dissenting opinion. The opinion of the majority has been criticised and the legislature of New York has since passed a statute to prevent a failure of a trust so declared. We simply decide that there is no declaration of trust in the deed made by Dr. DeRosset to the plaintiff, that the language sought to be construed into a trust is expressive only of his motive and purpose in conveying the property to the plaintiff and, in our opinion, expressly excludes the idea of attaching a trust thereto.

There is No Error.

WALKER, J., did not set.

CLARK, C. J., dissenting. The defendant declines to take the deed and pay $12,000 purchase money, alleging a defect of power in the plaintiff to execute a good title. The burden is on the plaintiff to show that it can, and it is not relieved of that burden because this is a "controversy submitted without action." *McKethan v. Ray,* 71 N. C., 165.

The conveyance from the late Dr. A. J. DeRosset and

wife to the plaintiff states that the parties of the first part "for the purpose of aiding in the establishment of a home for Indigent Widows and Orphans, or in the promotion of any other charitable or religious objects to which the property hereinafter conveyed may be appropriated   \*   \*   \*   " execute the conveyance to the trustees of St. James' Parish. This is not the expression of a motive but of the purposes, the uses to which the property "may be appropriated," and besides is not merely a specific purpose but a consideration and object of the deed.   The doctrine of *cypres* does not prevail in this State and the trustees must carry out the trust. If they do not, or if the above trust "in the promotion of any charitable or religious objects" is so vague and uncertain that a court cannot decree the specific performance of such trust, then there is a resulting trust in favor of the grantors, or, since they are dead, in favor of their heirs at law or devisees.   It affirmatively appears that the property for years past has not been used for a "Home for Indigent Widows and Orphans" and the proceeds of its sale, if collected, are to be used "for the promotion of charitable and religious objects."

The heirs at law or devisees of the grantors are not parties to this proceeding and cannot be bound by any decree herein, and as the defendant contends that upon the record it cannot be adjudged that the plaintiffs can make him an indefeasible title, he ought not to be compelled by the court to pay down $12,000, when if the defendant's contention as to the construction is correct, the parties entitled to the property are not parties to this action.   The cause should be remanded that proper parties may be made.   The defendant in his brief relies upon *McKethan v. Ray, supra,* which holds that upon a case agreed the court is not authorized to pass upon the validity of a title without making the heirs at law and devisees parties to the action, and that an action submitted without

controversy has no other or further effect than to dispense with summons and pleadings.

Until the heirs at law and devisees are made parties, it can serve no purpose to discuss the language of this deed. In *Finlayson v. Kirby,* 121 N. C., 106, this court *ex mero motu* remanded the case that additional parties should be made, saying that it would be useless to pass upon the matters of law "until all interested persons have had an opportunity to be heard." It however has been held in many cases in this State, some of which are cited in *Keith v. Scales,* 124 N. C., (relied on by defendant) at pp. 515, 516, that such a trust as is herein stated is void for uncertainty, as, among others, *Holland v. Peck,* 37 N. C., 255, where the property was given "to be disposed of by the Conference, as they shall in their Godly wisdom judge to be most expedient or beneficial for the increase and prosperity of the Gospel." This was held too indefinite to be executed. But it was far more definite than the words here used—"or in the promotion of any charitable or religious objects." Besides, other cases cited in *Keith v. Scales,* the whole matter is so fully and thoroughly discussed in the famous Tilden Will Case (*Tilden v. Green,* 130 N. Y., 29) that it is unnecessary now to cite others, especially as our decision cannot possibly guarantee the defendant a good title, in the absence of all the parties really in interest. The defendant is not seeking protection against the plaintiffs. Their deed would be an estoppel upon them. He wishes a decree that would give him a good title against the heirs at law and devisees of their grantor.

In *Tilden v. Green,* 130 N. Y., 29 (s. c., 14 L. R. A., 1) the purpose expressed was that if, as here, the first purpose named was not executed, the trustees were authorized to apply the fund "to such charitable educational purposes" as they might deem "most widely and substantially beneficial to mankind." It was held that the whole gift was uncertain and invalid because not enforcible at the suit of any benefi-

ciary. This cause attracted universal attention from the profession and the public, being the construction of the will of Samuel J. Tilden, who had been an eminent lawyer and candidate for the Presidency; the amount involved was very large; the decision was by one of the most eminent courts in the country, the Court of Appeals of New York, affirming the court below; and the cause was argued by a large number of the leading lawyers of the Union, among them, James C. Carter, Joseph H. Choate, Smith M. Weed, Lyman D. Brewster and Geo. D. Comstock. Among the Judges were Rufus W. Peckham (now upon the U. S. Supreme Court) and Alton B. Parker. There was a most thorough research and discussion, no authority nor argument being omitted by the counsel and the court. No research could possibly add to the light thus shed, upon the point before us, by the discussion and decision in that case. By the rulings there sustained as settled law, the deed in the present case is necessarily void because "there is no beneficiary who by suit can enforce execution of this trust" for the "promotion of any other charitable or religious objects."

In that opinion it is said (at p. 45): "If there is a single postulate of the common law, established by an unbroken line of decisions, it is that a trust without a certain beneficiary who can claim its enforcement is void, and the objection is not obviated by the existence of a power in the trustees to select a beneficiary unless the class of persons in whose favor the power may be exercised has been designated by the testator, with such certainty that the court can ascertain who were the objects of the power. The equitable rule that prevailed in he English Courts of Chancery, known as the *cypres* doctrine and which was applied to uphold gifts for charitable purposes when no beneficiary was named, has no place in the jurisprudence of this State." And the same is true in North Carolina. The subsequent letter of Dr. DeRosset, as to the legal effect of his deed, can have no effect.

Mr. Tilden would likewise have said his gift was valid, and so would any other grantor whose grant, gift or devise has been held invalid because against the above well settled principles and policy of the law.   We must administer the law and not our desire for the maintenance of a laudable but defectively expressed gift or devise for "charitable purposes."

*Tilden v. Green* is very generally recognized as conclusive authority and is so cited by this court in *Keith v. Scales,* 124 N. C., 515.